In the Matter of the Accounting of MARINE TRUST COMPANY OF BUFFALO et al., as Executors of EDMUND HAYES, Deceased, Respondents.

DARTMOUTH COLLEGE et al., Appellants; MOREY C. BARTHOLOMEW, as Administrator of the Estate of MARY H. HAYES, Deceased, et al., Respondents.

(Argued October 22, 1929; decided November 19, 1929.)

*Helen Z. M. Rodgers, Adelbert Moot* and *William L. Marcy* for Dartmouth College, appellant. The loans in question were payable out of the policies pledged to the insurance company for that purpose and created no debt enforcible against the insured or his estate. Hence, no relation of suretyship could arise. (*Wagner* v. *Thieriot,* 203 App. Div. 757; 236 N. Y. 588; *Stevens* v. *Mutual Life Ins. Co.,* 227 N. Y. 542; *Breard* v. *New York Life Ins. Co.,* 138 La. 774; *Walker* v. *Pennick,* 122 Va. 664; *Faris* v. *Faris,* 76 Ind. App. 336; *Union Central Life Ins. Co.* v. *Wood,* 11 Ind. App. 335; *Ruane* v. *Ins. Co.,* 194 Mo. App. 214.) The transactions in question were not " loans " but anticipated settlements by the insurer with the policy holder, based upon the accrued value of the policy and creating no personal liability on the part of the insured. (*Board of Assessors of Orleans Parish* v. *New York Life Ins. Co.,* 216 U. S. 517.)

*Ralph Ulsh* for University of Buffalo, appellant. The parties by their contract provided for repayment of the loans from the proceeds of the policies under all contingencies. These remedies, constituting a complete scheme, exclude any personal liability, under the well-established doctrine *expressio unius est exclusio alterius.*

(*Village of Argyle* v. *Plunkett*, 220 N. Y. 306; *Pres., etc.,*
*D. & H. Canal Co.* v. *Pa. Coal Co.*, 50 N. Y. 250; *Smith*
v. *Brooklyn Savings Bank*, 101 N. Y. 58; *Wagner* v.
*Thieriot*, 203 App. Div. 757; 236 N. Y. 588; *Dannhauser* v.
*Wallenstein*, 169 N. Y. 199.)

*Charles F. Blair* and *Alton R. Erickson* for Morey C.
Bartholomew, as administrator, etc., respondent. The
true relationship between the parties to these loans was
that of debtor and creditor. (*Wagner* v. *Thieriot*, 203
App. Div. 757; 236 N. Y. 588; *Equitable Life Assur.
Co.* v. *De Lisle*, 194 Mo. App. 42.) The clause in three
of the semi-tontine policies, providing for payment of the
proceeds to the beneficiary upon the death of the insured,
" any indebtedness to the society on account of this
contract to be first deducted therefrom," was not intended
to confer a loan privilege upon the insured. (*Union
Central Life Ins. Co.* v. *Woods*, 11 Ind. App. 355.) The
true relation between Mr. and Mrs. Hayes in these loan
transactions was that of principal and surety and the
fact that the written agreements bear no express evidence
of a principal and surety relationship between husband
and wife does not prevent the true relationship of the
parties being shown by extrinsic evidence. (*Dibble* v.
*Richardson*, 171 N. Y. 131; *Erie County Savings Bank* v.
*Roof*, 80 N. Y. 591; *Vartie* v. *Underwood*, 18 Barb. 561;
*Hubbard* v. *Curney*, 64 N. Y. 457; *Knowles* v. *Cuddeback*,
19 Hun, 590; *Peck* v. *Burrell*, 48 Hun, 471; *Allis* v. *Ware*,
28 Minn. 166; *Union Central Life Ins. Co.* v. *Woods*, 11
Ind. App. 335; *Mutual Benefit Life Ins. Co.* v. *Swett*, 222
Fed. Rep. 200.)

*Allen Keeney* for Marine Trust Company et al., as
executors, respondents.

O'BRIEN, J. Edmund Hayes took out five policies on
his own life in the Equitable Life Assurance Society.
Originally, four of them were payable to himself and one
to his executors, administrators and assigns. He assigned

all of them to his wife. In the year 1895, at the request of husband and wife, the policies were altered so as to become payable to the wife, if living, and, if not, to the husband, his executors, administrators or assigns. Both stated in their letter to the insurance company requesting such alteration that the purpose was, in the event of the husband's survival, that the policies should revert to him. In the year 1907 General Hayes applied to the insurance company for such loans on the policies as were then authorized by chapter 690 of the Laws of 1892. Loan agreements were executed not only by the husband but by the wife and a sum contemplated by the statute was advanced on the policies, the company's check was made payable to Edmund Hayes and Mary H. Hayes, and the wife indorsed to her husband for his own use. By the execution of the loan agreements she may be considered to have assented to the substitution of the company in her stead to the extent of its interest. General Hayes paid the annual premiums on the policies and the interest on the loans and the company extended the time for repayment of the principal from year to year. Without repayment he died in 1923. The insurance company, after deducting the amount advanced, paid the remainder of the proceeds of the policies to the wife. During the following year she also died and her estate made claim upon her husband's estate for the amount deducted which represents the advance. The claim was rejected by the Surrogate but this part of his decree was reversed and the claim allowed. The Appellate Division held that the wife was a surety on a personal liability assumed by the husband. We take the view that, under the provisions of the statute, the documents forming the offer, the agreements and receipts and according to the conditions created by the joint acts of the husband and wife, no resort to personal liability could ever have occurred, that the conventional relation of debtor and creditor, therefore, did not exist between the company

and the insured and that, rather than a loan in the strict sense, although so designated in the agreement, the sum of money which the insured was allowed to use constitutes an advance upon the policies made with the consent of the beneficiary. The facts bear such a close analogy to those in *Wagner* v. *Thieriot* (203 App. Div. 757; affd., 236 N. Y. 588) and in *Board of Assessors of Orleans Parish* v. *N. Y. Life Ins. Co.* (216 U. S. 517) that the principle of those decisions must be held to control.

Chapter 690 of the Laws of 1892, section 16, the statute in effect during the year 1907, allowed any life insurance company to lend a sum " not exceeding the lawful reserve which it holds upon any policy " on the pledge to it of such policy and its accumulations as collateral security. It is conceded that none of the five loans exceeded the lawful reserve on any policy. The amount of each loan was slightly less than the cash value of the policy on the date of the loan. The loan offer by the company to the insured includes the condition that in case of death of the insured before the maturity of the loan or if the policy is surrendered or canceled on account of failure to comply with the conditions of the loan, the cash balance, if any, after payment of the loan, *will* be paid to the parties legally entitled thereto. The loan agreement, executed by husband and wife, provides that if the surrender value of the policy should exceed the amount of the loan with interest at five per cent, the excess value above the loan and interest *shall* be due and payable to the legal owner or owners of the policy on demand. The loan acknowledgment by the company likewise stipulates that in the event of the death of the insured before the maturity of the loan, any indebtedness *will* be deducted from the amount payable under the policy, the balance being payable to the person legally entitled thereto. Although these advancements on the policies are denominated loans and the insured and his wife did in terms agree to repay them, clearly there could have been no intention to enforce a personal liability

against the recipient of the advances. The agreement is silent in respect to any method of enforcement except deduction from the amounts payable under the policies. Since each advancement was less than the cash value of the policy at the time the moneys were advanced, the company could not suffer a deficit. The value of the policies constituted the fund out of which the company could repay its loans. These securities, always of greater value than the loans, were in its possession and formed complete protection. Under such circumstances enforcement of any remedy against the person of the borrower doubtless never was considered. Indeed, whether an attempt, if made, could have successfully resulted is far from certain. The affair is similar to transactions where the establishment of a particular fund or a particular remedy may be deemed to provide the exclusive remedy. (*Gihon* v. *Stanton*, 5 Seld. 476; *Hidden* v. *Waldo*, 55 N. Y. 294; *Newburger-Morris Co.* v. *Talcott*, 219 N. Y. 505, 511; *Village of Argyle* v. *Plunkett*, 226 N. Y. 306.)

The facts are not identical with those in the *Wagner Case* (*supra*). A distinction in principle, however, is not apparent. The statute (Laws of 1892, chap. 690, § 16), under which these moneys were advanced to General and Mrs. Hayes, unlike the statute (Laws of 1909, chap. 301, § 7) in that case, did not compel the company to act nor did it provide that the loans should be made on the sole security of the policy. Yet the company was authorized to act and availed itself of its statutory power. As the loan did not and could not exceed the lawful reserve which the company held on the policy, consequently, although not expressly so stated, the policy was, in fact, the sole security. The company promised that the cash balance of the policy after payment of the loan *will* be paid to the party entitled thereto, that the excess value above the loan *shall* be due and payable to the legal owner and that in the event of the death of the insured before the maturity of the loan, any loss *will* be deducted from

the amount payable under the policy and the balance paid to the person legally entitled thereto. A very close resemblance to these facts appears also in *Board of Assessors of Orleans Parish* v. *N. Y. Life Ins. Co.* (*supra*). The insurance company in that case, like the one at bar, was a New York corporation making loans on its policies pursuant to the same statute in effect when these Hayes loans were made by the Equitable. The nature of the transaction was thus expressed by the Supreme Court: " This is called a loan. It is represented by what is called a note, which contains a promise to pay the money. But as the plaintiff never advances more than it already is absolutely bound for under the policy, it has no interest in creating a personal liability, and therefore the contract on the face of the note goes on to provide that if the note is not paid when due it shall be extinguished automatically by the counter credit for what we have called the reserve value of the policy. In short, the claim of the policyholder on the one side and of the company on the other are brought into an account current by the very act that creates the latter. The so-called liability of the policyholder never exists as a personal liability, it never is a debt, but is merely a deduction in account from the sum that the plaintiffs ultimately must pay. In settling that account interest will be computed on the item for the reason that we have mentioned, but the item never could be sued for, any more than any other single item of a mutual account that always shows a balance against the would-be plaintiff. In form it subsists as an item until the settlement, because interest must be charged on it. In substance it is extinct from the beginning, because, as was said by the judge below, it is a payment, not a loan."

The order of the Appellate Division should be reversed and that of the Surrogate's Court affirmed, with costs to all parties payable out of the estate.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and HUBBS, JJ., concur.

Order reversed, etc.