**DOETHLAFF, v. PENN MUT. LIFE INS. CO. et al.**

**PENN MUT. LIFE INS. CO. v. DOETHLAFF et al.**
**Nos. 8421, 8422.**

Circuit Court of Appeals, Sixth Circuit.
Jan. 17, 1941.

James H. Nacey, of Cleveland, Ohio, for Arthur George Doethlaff.

Walter A. Marting, of Cleveland, Ohio (Walter A. Marting and Jones, Day, Cockley & Reavis, all of Cleveland, Ohio, on the brief), for Penn Mut. Life Ins. Co.

Suggs Garber and Howard D. Burnett, both of Cleveland, Ohio, for Gardner, trustee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

This case was tried upon an agreed statement of facts.

On January 11, 1924, appellant, the Penn Mutual Life Insurance Company, issued a policy upon the life of Arthur George Doethlaff in the sum of $4,000. A partner of Doethlaff was the original beneficiary; but on January 10, 1927, the policy was changed to make it payable to Bertha E. Doethlaff, wife of the insured, or to Arthur G. Doethlaff, Jr., son of the insured, if he should survive both his father and mother; otherwise to the administrator of the insured.

■ The insured was adjudged a bankrupt on September 3, 1937. He listed the policy in his schedule of assets. He had been insolvent for four years and during the period had paid premiums on the policy in the amount of $428.49. The cash surrender value thereof at bankruptcy was $1,286.36 and this included the accumulated dividends of $448.06. On petition of the trustee in bankruptcy the referee, upon stipulated facts, ordered the insurance company to turn over to the trustee the equivalent of the premiums it had received within the four-year period together with the accumulated dividends and interest thereon. The court confirmed the order. The beneficiaries were not made parties defendant to the petition although it is clear enough that they had a vital interest adverse to the claim of the trustee and should have been made parties defendant.

*First, as to the premiums:*

■ The referee and the court based the order upon the view that the payment of premiums by the insured while insolvent was "in fraud of creditors" under Ohio General Code, Section 9394, printed in the margin.[1] We do not agree.

---

[1] "§ 9394. *Exemption of proceeds from claims of creditors; exception; change of beneficiary.* All contracts of life or endowment insurance or annuities upon the life of any person, or any interest therein, which may hereafter mature, and which have been or shall be taken out for the benefit of, or made payable, by change of beneficiary, transfer or assignment to, the wife or children, or any relative dependent upon such person, or any creditor, or to a trustee for the benefit of such wife, children, dependent relative or creditor, shall be held, *together with the proceeds or avails of such contracts*, subject to a change of beneficiary if desired, free and clear from all claims of the creditors of such insured person or annuitants; *provided, that, subject to the statute of limitations, the amount of any premium upon said contracts, endowments or annuities paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the contracts*, but the company issuing any such contract shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payment, written notice is given to it by a creditor, specifying the amount of his claim and the premiums which he alleges have been so fraudulently paid." (Italics ours.)

The statute does not denounce the payment of such premiums as fraudulent in law. It does not define the phrase "in fraud of creditors." The case of Lytle v. Baldinger, 84 Ohio St. 1, 95 N.E. 389, Ann.Cas.1912B, 894, is cited as the nearest approach to an interpretation of the statute by an Ohio court but neither the present issues nor the statute were involved in the Lytle case. Nothing said in the Lytle case can be construed as an interpretation of the language "in fraud of creditors."

We are left therefore to our own view of the law and it must be kept in mind that we are dealing with an exemption statute which is entitled to a construction liberal to the debtor. We think its meaning is that creditors have a remedy where premiums have been paid with intent to delay, hinder and defraud them and that the question of intent is one of ultimate fact to be determined upon a consideration of the attending facts and circumstances, such as the question of the insolvency of the insured, his attitude toward his debts, the amounts thereof, his prospective ability to liquidate them, whether the policy was issued before or after insolvency, its cash surrender value; and finally, whether after all he, in good faith, intended to provide by moderate premiums some protection to those who had a natural claim upon his bounty. See Central Bank of Washington v. Hume, 128 U.S. 195, 9 S.Ct. 41, 32 L.Ed. 370; Ross v. Minn. Mut. L. Ins. Co., 154 Minn. 186, 191 N.W. 428, 31 A.L.R. 46.

This view accords with the weight of authority [see Annotations under the Ross case, 31 A.L.R. 52]; and we are satisfied with it. There is no evidence to indicate any actual intention upon the part of the insured to defraud his creditors by keeping up the payments of the premiums upon the policy even after he was insolvent.

Moreover, the premiums to be returned to the trustee are to be paid by the insurance company out of the cash surrender value of the policy. We think that this was likewise erroneous. The statute is plain. The trustee can be paid only "from the proceeds of the contracts * * *." The contract is the policy and by its terms it can have no "proceeds" until it matures, either by the death of the insured or as an endowment. It has not matured. The bankruptcy did not mature it. The statute does not undertake thus to rewrite the policy. See Greiman v. Metropolitan L. Ins. Co., 3 Cir., 96 F.2d 823.

Again, the court was unauthorized to direct the premiums to be turned over out of the cash surrender value of the policy. Under the contract there could be no "cash surrender value" to be turned over except upon the surrender of the policy. The statute does not contemplate that the insured should surrender his policy upon bankruptcy and accept a cash surrender value in lieu thereof. He is not required to do so and he has not done so. The statute does contemplate that the policy may be kept alive "in accordance with its terms" and the turnover order recognized this by providing that the insured could keep it in force by paying directly to the trustee the amount which the insurance company was directed to pay or by borrowing the amount from the insurance company and directing it to pay it over to the trustee.

*Second, as to the dividends and interest thereon.*

We cannot discover from the record the basis for the order to turn over the accumulated dividends and interest. We assume that the referee and the court were of the opinion that the statute did not exempt dividends and interest.

The contract itself provided that "dividend credits" would constitute "net proceeds" of the policy and the statute, as we have indicated, exempts "the proceeds or avails of such contracts" from the claims of creditors. The fact that the dividends might, under the policy, be left with the insurance company at interest and be used to accelerate the maturity of the policy did not change their nature nor take them out of the exempted class. In re Keil, 2 Cir., 88 F.2d 7. The interest is no less "proceeds" than the dividends.

Appellee insists that the appeal of the insurance company should be dismissed because it did not seek a review of the referee's order. We need not pass upon the point further than to say that it is immaterial. The case is before us upon the appeal of the bankrupt and this is sufficient for a determination of the controversy.

The order appealed from and the turnover order are set aside and the case remanded to the district court with directions to dismiss the petition and motion

of the trustee filed March 7, 1938, and for further proceedings not inconsistent herewith.

Reversed and remanded.