## MERGENTHALER v. DAILEY.

### No. 225.

Circuit Court of Appeals, Second Circuit.

June 8, 1943.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

Theodore E. Wolcott, of New York City (Gustave Simons and Raymond S. Baron, both of New York City, on the brief), for appellant.

Abraham I. Menin, of New York City (Joseph J. Corn and Julius B. Sheftel, both of New York City, on the brief), for appellee.

CLARK, Circuit Judge.

Appellant, William J. Mergenthaler, Jr., as assignee, appeals from an order of the district court denying in toto his claim for $40,750 damages against Case & Company, Inc., bankrupt, for its breach, by bankruptcy, of an alleged agreement to act as sales agent for J. Mergenthaler & Son, his assignor, and granting to John F. Dailey, Jr., the trustee in bankruptcy, costs of $134.95. The court's order reversed a determination of the referee, allowing the claim to the extent of $5,750 for out-of-pocket disbursements in anticipation of the agreement and omitting to assess costs against either party.

Case & Company prior to the filing of an involuntary petition on July 10, 1941, had a well-developed sales organization vending imported laces to leading department stores all over the country and in Hawaii. J. Mergenthaler & Son manufactured high-style braids and trimmings, which it sold to the cutting-up trade (i. e., the manufacturers of dresses) and to retail department stores. In May, 1941, negotiations were undertaken between the two with a view to an agreement whereby the bankrupt's organization would act as sales agent for "Mega" merchandise. No written contract was ever prepared. But appellant claims that all the essential terms of a contract had been agreed upon at the time Case & Company became bankrupt, and he points out that J. Mergenthaler & Son by action in reliance upon this agreement had incurred out-of-pocket expenses at that time in the amount of $5,750 for manufacturing samples of Mega merchandise for the bankrupt's sales force. A package of the samples had been delivered, but was returned unopened shortly before the bankruptcy. Besides J. Mergenthaler & Son's out-of-pocket expenses, appellant seeks as damages lost profits, calculated at $35,000 upon the basis of a minimum sales guaranty, or alternatively upon the basis of its past profits from business rejected in favor of the contract.

If the negotiations here ever culminated in an oral contract, there might be an issue of its enforceability under the Statute of Frauds, New York Personal Property Law, Consol.Laws N.Y. c. 41, § 85, sub. 2; and the parties have argued this point at some length. But we think the appeal must be disposed of on failure of proof of the essential terms of a contract.

Appellant's own testimony as to the alleged terms of contract was quite vague. With respect to the price of the merchandise, appellant declared that the bankrupt's officers had agreed to a 100 per cent mark-up over costs, profits to be shared equally, "provided it could be sold." But no discussion was had as to the cost bases. Indeed, appellant could definitely ascertain costs only after manufacturing the samples. It seems inconceivable—as the quoted portion of appellant's testimony itself indicates—that the debtor intended to harness itself with an exclusive agency agreement without knowing the price of the goods to be sold, their consequent marketability, and its own dependent profits. Again as to the quantity of the merchandise to be sold, appellant testified simply that Mr. Barry, the bankrupt's president, said that "if we would give him our line exclusively for the retail stores, they could assure us of at least one hundred fifty to two hundred thousand dollars worth of volume the first year which was the fall season," while his sales head testified that "Mr. Barry said that he was sure that they would do $150,000.00 the first season, if not more." In this there was no clear understanding of a guaranty to sell $150,000 worth of goods, as claimed by appellant in his complaint; even appellant approximates the amount. Nor does it establish a definite agreement that the bankrupt was to have an exclusive sales agency. At best this was merely suggested for future decision.

Both the bankrupt's president and its vice-president testified definitely, albeit briefly, that no terms of contract had ever been agreed upon; that the Mergenthaler firm was to make up the samples; and that then, if they liked the color range and found the merchandise adaptable to their own line, and the price was right, they would agree to a sales agency. It does appear that these officers designated by written memorandum the samples to be manufactured; that they pressed J. Mergenthaler & Son to have them ready before their salesmen were scheduled to begin their rounds; that the number manufactured corresponded to the number needed by their sales force; and that they were to pass upon their mountings. This tended to show that the bankrupt had in prospect some type of contract to sell Mega products. But it was not conclusive of a definite exclusive sales agree-

ment, especially in view of the other testimony.

On this state of the evidence the referee and the district court held that the negotiations were too indefinite to constitute a contract. We can see no compelling reason to disturb that finding.

 The referee, however, allowed a claim of $5,750 for out-of-pocket expenses on the ground that "the moneys they expended and procedure they adopted were really at the request of the bankrupt, and though bankruptcy prevented the consummation of the plan, justice and equity require that these costs, properly expended in developing the plans, should be allowed and reimbursed to them." The district court reversed on the ground that there was no obligation to pay for the samples, because they were made up simply in aid of unsuccessful negotiations for a contract. We have the same duty as the district court to accept the referee's findings, unless they are clearly erroneous. Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975; Michelsen v. Penney, 2 Cir., 135 F.2d 409.

It is difficult to identify the legal rationale of the referee's decision. We can at best suppose that this was a quasi-contractual allowance for benefits rendered. But admittedly Case & Company has received no benefits in hand. In fact there was evidence that some of the samples were sold by the Mergenthaler firm to third parties. Where, however, the performance rendered under an unenforceable contract is bargained for as part of an agreed exchange, recovery may be had of the reasonable value of the performance, despite an absence of actual enrichment. Blair Engineering Co. v. Page Steel & Wire Co., 3 Cir., 288 F. 662; Von Reitzenstein v. Tomlinson, 249 N.Y. 60, 162 N.E. 584; Kearns v. Andree, 107 Conn. 181, 139 A. 695, 59 A.L.R. 599. Cf. Tilley v. Cook County, 103 U.S. 155, 26 L.Ed. 374; Hoagland, Allum & Co. v. Allan-Norman Holding Corp., 228 App.Div. 133, 239 N.Y.S. 291. See Restatement, Contracts, §§ 347, 348; 1 Williston on Contracts, Rev. Ed., § 48; 2 id. § 536. But the samples manufactured here were not really bargained for, but were provided voluntarily in anticipation of a contract; in effect they represented an advertisement expense. Appellant himself admits that the bankrupt made no separate promise to pay for them. Their cost might have been re-covered as overhead under a contract; but without a contract, no recovery can be allowed here. Tilley v. Cook County, supra.

 The district court was clearly within its province in taxing against appellant the costs of the proceeding (i. e., stenographic fees paid to an official reporter of the referee and a fee for the opinion of the district judge), even though the referee omitted to make an assessment. The Bankruptcy Act provides that "the courts" shall tax costs in their discretion. 11 U.S.C.A. § 11, sub. a(18); 1 Collier on Bankruptcy, 14th Ed.1940, 284-9. The court may be either the judge or the referee. 11 U.S.C.A. § 1(9). It does not appear that the referee considered the matter of costs here; and it would, therefore, seem not inappropriate for the judge to act. Even if the referee be deemed to have denied an assessment of costs against either party, his action was subject to review by the district judge. 11 U.S.C.A. § 66(7). Especially must this be so where, as here, the judge has reversed the judgment of the referee on the merits against the moving party. Clerke v. Harwood, 3 U.S. 342, 3 Dall. 342, 1 L.Ed. 628; Frey & Son v. Welch Grape Juice Co., D.C.Md., 242 F. 1004; 20 C.J.S., Costs, § 310, p. 556.

Affirmed.