## SCHWARTZ v. SELDON.

### No. 34.

Circuit Court of Appeals, Second Circuit.

Dec. 28, 1945.

Rehearing Denied Feb. 1, 1946.

Loüis Koenigsberg, of Brooklyn, N. Y. (Walter B. Milkman, of Brooklyn, N. Y., on the brief), for bankrupt.

Henry W. Parker, of New York City (Max Schwartz, of New York City, on the brief), for trustee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The question before us on these cross-appeals is whether the cash surrender values of two life insurance policies, in each of which the bankrupt is the insured and his wife the beneficiary with power reserved to the insured to change the beneficiary, are exempt from the claims of

the insured's trustee in bankruptcy under the provisions of the Insurance Law of New York, § 166, Ch. 28, Consol. Laws.

Upon his voluntary petition Mark Seldon was adjudicated bankrupt on June 7, 1944. He scheduled debts, one of which had been reduced to judgment in 1929, and listed as his only assets two policies of life insurance, which he claimed as exempt.[1] One of these policies was issued in 1925 by Metropolitan Life Insurance Company in the amount of $5,000, and the other was issued in 1929 by Equitable Life Assurance Society in the amount of $10,000.[2] At various times in 1936 and 1937 the bankrupt borrowed money from the insurance companies upon their respective policies, and the sums so borrowed were repaid to them during the years 1937 to 1940.[3] Asserting that such repayments were made by the bankrupt while he was insolvent and with intent to defraud creditors, the trustee in bankruptcy initiated the present litigation by filing with the referee a petition which sought to reach the cash surrender value of the policies to the amount of such repayment of loans. The referee found that the bankrupt had repaid to the Equitable loans of $1,140 and to the Metropolitan loans of $923.69 and that such payments, totaling $2,063.69, were made with actual intent to hinder, delay and defraud creditors; and an order was entered directing the bankrupt either to pay that amount to the trustee or to turn over the policies so that the trustee might realize it out of their cash surrender values. Upon review of the order, the District Court held the Equitable policy exempt and the Metropolitan not exempt in the amount of $675.-

66. The referee's order was modified accordingly. Both parties have appealed.

Upon the trustee's appeal the issue is whether the District Court was justified in rejecting, except as to an item of $675.66 paid to the Metropolitan, the referee's findings that the repayment of the loans constituted transfers in fraud of creditors. The trustee proved the making of the loans by introducing checks of the insurance companies bearing dates in 1936 and 1937, payable to the order of the bankrupt, and by him endorsed. Repayment of $1,140 on the Equitable loans was proved by the concession of the bankrupt's attorney, but he did not concede that the bankrupt himself repaid it. There was no concession, and no proof, of any repayment of loans on the Metropolitan policy except the $675.66 item, which will be discussed in considering the bankrupt's appeal. The trustee then called the bankrupt as a witness. He testified that the borrowed money was given or lent to his wife[4] to help her in a business she conducted in the name of the Acme Hat Company, and that she repaid the loans by direct payments to the insurance companies. On cross-examination the bankrupt testified that his wife paid the premiums on the policies; that he was not in business for himself after 1936, but had been employed steadily since the latter part of 1938 and his average weekly wage was around forty or forty-five dollars. No other witness was called by the trustee. The wife, called on behalf of the bankrupt, testified that she had always paid the premiums on the policies and that she repaid the loans out of the funds of her business, her own earnings, and $1,000

[1] Section 6 of the Chandler Act, 11 U.S.C.A. § 24, allows to a bankrupt the exemptions prescribed by the state laws in force at the date of the filing of his petition. On June 7, 1944, section 166 of the Insurance Law of 1939, § 166, Ch. 28, Consol.Laws, was in force. In so far as it affects the policies here involved, section 166 is substantially a reenactment of section 55-a of the Insurance Law of 1909, of which section 55-a took effect in 1927. N.Y.Laws 1927, Ch. 468. Since none of the bankrupt's debts was contracted before 1928, no constitutional question, such as was discussed in In re Messinger, 2 Cir., 29 F.2d 158, 68 A.L.R. 1205, certiorari denied 279 U.S. 855, 49 S.Ct. 351, 73 L.Ed. 996, arises from the retroactive application of section 166.

[2] In 1940 the face amount of the Equitable policy was reduced to $5,000.

[3] Money borrowed from an insurance company upon the policy does not create a debtor and creditor relationship. The so-called "loan" is really an "advancement" and merely reduces the amount the company must ultimately pay. See Orleans Parish v. New York Life Ins. Co., 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597; Wagner v. Thierot, 203 App.Div. 757, 197 N.Y.S. 560, affirmed 236 N.Y. 588, 142 N.E. 295; Matter of Hayes' Will, 252 N.Y. 148, 154, 169 N.E. 120.

[4] Turning over the proceeds of the loans to the wife was not a fraudulent transfer, Schwartz v. Holzman, 2 Cir., 69 F.2d 814, certiorari denied 293 U.S. 565, 55 S.Ct. 76, 79 L.Ed. 665, and the trustee makes no such claim.

collected upon a claim arising out of an automobile accident. The referee's brief memorandum contains no analysis of the testimony, but he later signed findings, submitted by the attorney for the trustee, which recited that the testimony of the bankrupt and his wife that she had at all times paid the premiums is unworthy of belief and untrue, and that the repayments of loans were "made by or on behalf of the bankrupt while he was insolvent * * * with the intent to hinder and delay and defraud his creditors * * * and constituted fraudulent transfers under Article 10 of the Debtor and Creditor Law of the State of New York [Consol.Laws, c. 12]." The District Court ruled that these findings were "bare conclusions" having no support in the record.

It is true, as the trustee urges, that the uncontradicted testimony of interested witnesses to an improbable fact does not require acceptance of their testimony, and that an appellate court should be loath to upset the facts found by a trier who heard the witnesses. Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975, 977; Mergenthaler v. Dailey, 2 Cir., 136 F.2d 182, 184. That the wife had always paid the premiums was, perhaps, improbable since she was not shown to have had any source of income before 1936. But the essential issue was not who paid the premiums but who repaid the loans. As to that the referee's finding was equivocal; he found, that the repayments were made "by or on behalf of the bankrupt" which seems to indicate at least a doubt whether they were not made by the wife, as she claimed. Certainly there was greater probability that she had funds from which to repay the loans than that the bankrupt had, as he was earning only some $40 a week and had no property except his interest in the policies. Furthermore, even if the finding be construed to mean that the bankrupt repaid the loans, the policy would not lose its exempt character unless the payment constituted a transfer made with "actual intent" to defraud creditors, as required by § 166 if exemption is to be defeated. See Doethlaff v. Penn Mut. Life Ins. Co., 6 Cir., 117 F.2d 582, 584, certiorari denied 313 U.S. 579, 61 S.Ct. 1100, 85 L.Ed. 1536; 1 Moore, Collier on Bankruptcy, 840. We think the record contains no evidence justifying an inference of "actual intent" to defraud creditors. Accordingly the District Court was right in holding the Equitable policy exempt; and no repayments on the Metropolitan policy, except the $675.66 item, were proved. On the trustee's appeal the order must be affirmed.

With respect to the Metropolitan policy the order must be reversed. The money with which the payment of $675.66 was made was obtained by the bankrupt in November, 1940, as a result of procuring a reduction in the face amount of the Equitable policy from $10,000 to $5,000. Upon such reduction he received Equitable's check representing, as we understand it, the balance of the cash surrender value ascribable to the portion of the insurance cancelled by reducing the face amount of the policy, and this check the bankrupt endorsed over to the Metropolitan in repayment of the loan on its policy in the amount of $675.66. Section 166 of the Insurance Law of New York provides that "if any policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary * * * such third person beneficiary * * * shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person effecting the insurance." The term "proceeds and avails", as defined by the section, includes cash surrender and loan values, and the provisions of the section are declared applicable "whether or not the right is reserved in any such policy to change the beneficiary therein designated * * *, and no person shall be compelled to exercise any rights, powers, options or privileges under such policy." Paragraph 4 of the section provides that "Every assignment or change of beneficiary, or other transfer, shall be valid, except in cases of transfer with actual intent to hinder, delay or defraud creditors, as such actual intent is defined by article ten of the debtor and creditor law; * * *."

In Schwartz v. Holzman, 2 Cir., 69 F.2d 814, certiorari denied 293 U.S. 565, 55 S.Ct. 76, 79 L.Ed. 665, the insured surrendered his policy a few weeks before filing his petition in bankruptcy and turned over to his wife, the beneficiary named in the policy, the amount of the cash surrender value received from the insurance company. His trustee in bankruptcy sought to recover this sum from the wife, but this court held that under section 55-a of the Insurance Law, the predecessor of the

present section 166, the lawful beneficiary was entitled to the "proceeds and avails" of the policy, i. e., the cash surrender value, as against creditors of the insured. In re Keil, 2 Cir., 88 F.2d 7, certiorari denied Duberstein v. Keil, 301 U.S. 708, 57 S.Ct. 941, 81 L.Ed. 1362, is a similar holding as to accumulated dividends. See also 1 Moore, Collier on Bankruptcy, 835-837. In the light of these cases we think it clear that the bankrupt, though insolvent, could have endorsed the Equitable's check to his wife without making a transfer in fraud of creditors. And if he could lawfully make a direct transfer to her it seems obvious that he could do so indirectly by endorsing the check to the Metropolitan to be used for repaying the loan and thereby increasing the cash surrender value of its policy, of which the wife was the beneficiary. In other words, no actual intent to defraud creditors can be found from the mere transferring of one exempt fund into another exempt fund. Even the conversion of nonexempt property into exempt property by an insolvent contemplating bankruptcy has been held a transaction not intended to defraud creditors in the absence of evidence of extrinsic fraud. Forsberg v. Security State Bank, 8 Cir., 15 F.2d 499, 49 A.L.R. 915; 1 Moore, Collier on Bankruptcy, 840. Consequently the Metropolitan policy should have been held exempt from reach by the trustee.

The order is affirmed on the trustee's appeal and reversed on the bankrupt's appeal.

On Petition for Rehearing.

PER CURIAM.

The opinion in this case, handed down December 28, 1945, treated the bankrupt's claim of exemption as governed by § 166 of the Insurance Law of 1939, Consol. Laws, c. 28. By petition for rehearing the trustee in bankruptcy asserts that the applicable statute is § 55-a of the Insurance Law of 1909, Laws 1927, c. 468, § 1. This is correct because one of the listed debts was a 1929 judgment and subdivision 5 of § 166 declares:

"5. The term 'creditor' as used in this section shall include every claimant under a legal obligation contracted or incurred after the effective date of this chapter. * * * The rights of creditors whose claims were contracted or incurred prior to the effective date of this chapter shall be governed by sections fifty-five-a, fifty-five-b and fifty-five-c of chapter twenty-eight of the consolidated laws. This section insofar as it may differ, in form, language or substance, from said sections, is not intended, in any way, to affect the interpretation or construction of said sections as applied to such rights."

When the appeal was heard neither in briefs nor argument did either party call our attention to subdivision 5 nor contend that § 55-a rather than § 166 was the controlling statute. The difference now urged as material is that § 55-a excepts "cases of transfer with intent to defraud creditors," while § 166 excepts "cases of transfer with actual intent to hinder, delay or defraud creditors, as such actual intent is defined by article ten of the debtor and creditor law." Subd. 4.

We have again reviewed the case with § 55-a considered as the controlling statute. Neither the difference in statutory language nor the New York cases cited by the petitioner convince us that a different result is required. Accordingly the petition for rehearing is denied.