In the Matter of James George STAFOS, Bankrupt-Appellant,

v.

Laurence M. JARVIS, Trustee in Bankruptcy, Appellee.

No. 72–1495.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 12, 1973.

Decided April 30, 1973.

Rehearing Denied May 31, 1973.

Thomas E. Joyce, Kansas City, Kan. (Wash H. Brown, Kansas City, Kan., on the brief), for appellant.

Gerald T. Elliott, Kansas City, Kan. (Robert M. Kaplan, Kansas City, Kan., on the brief, Schnider, Shamberg & May, Kansas City, Kan., of counsel), for appellee.

Before MURRAH, SETH and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

James George Stafos filed a voluntary petition in bankruptcy on December 24, 1970, listing unsecured debts of $612,132.06 which he had incurred as a self-employed broker-distributor and packager of truck farming produce. He claimed as exempt homestead property, inter alia, a 13.2 acre tract of land in Wyandotte County, Kansas, acquired by him and his wife, Reva, who is not a party to this proceeding, in 1945 as joint tenants, with right of survivorship. Stafos, his wife and children have continually resided on the property since 1945. In his petition, Stafos estimated the value of the property at $35,000.00. With some minor exceptions, the property has been *used* as the family home and for farm crop income. Reva Stafos has been actively engaged in the farm operations on the acreage and some 60 acres of adjacent leased acreage. Stafos testified that they did about $200,000.00 "worth of business" from the farming operation in 1971.

Stafos relied upon the provisions of Article 15, § 9 of the Kansas Constitution [1] and K.S.A. § 60–2301 in support

---

1. Article 15, § 9 provides in pertinent part: A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements there-

of his contention that the entire 13.2 acres is exempt. The language contained in the above cited statute is identical to the language contained in Article 15, § 9. Until March 1, 1966, the acreage was located outside the limits of any incorporated city or town. On that date, by ordinance enacted in accordance with the then applicable law, the 13.2 acres was annexed to the city of Kansas City, Kansas. Neither Stafos nor his wife consented to the annexation, nor is there any evidence that they were movants in respect thereto. No portion of the acreage has been platted.

The Trustee in Bankruptcy filed his report on March 4, 1971, allowing Stafos one acre to be set aside as his exempt homestead, which is to include his family home out of the total 13.2 acres, value unknown. Stafos objected and a hearing was held before the Referee in Bankruptcy on March 18, 1971. One Rex Vickers, a real estate expert, testified that on that date the Stafos acreage was part of the "Muncie Industrial Area" zoned "J" for heavy industry and that considerable industry had already located in the immediate vicinity. He further testified that part of the Stafos acreage had been previously used as an office building constructed by Miller Construction Company, now occupied and used as a salvage yard at a monthly rental to Stafos of $140.00. He also testified with respect to a building used by Fouts Trucking Company. In his expert opinion "the whole area there gives the complexion of an industrial site and an industrial area; not a farm." He would not classify the acreage as rural land, but rather as urban industrial land of a minimum value of $10,000.00 per acre. He did acknowledge that when he viewed the acreage the only major visible *use* being made thereof was farming. Harry Duckers, County Agricultural Agent, testified that the Stafos' have continually farmed the land since 1948.

On January 24, 1972, the Referee filed his Order, with detailed findings and conclusions, approving the Trustee's Report and denying Stafos' objection. From that Order Stafos filed his petition for review before the presiding United States District Judge, Honorable Earl E. O'Connor. The Court entered its Order on May 19, 1972, fully adopting the Referee's findings and conclusions. It held that annexation reduced Stafos' homestead to one acre. It is from that Order that this appeal is taken.

Stafos contends here, as he did below, that the federal courts should abstain because the homestead exemption issue decided in In The Matter of Stafos, Bankrupt, 354 F.Supp. 299 (D.Kan. 1972), has not been decided by the Kansas state courts and that the Kansas courts are the best judges of the Kansas Constitution. We have no argument with these contentions, per se. 11 U.S. C.A. § 24 allows bankrupts the exemptions prescribed by state laws at the date of filing. In Re Cummings, 413 F. 2d 1281 (10th Cir. 1969), cert. denied Sears, Roebuck & Co. v. Horton, 397 U. S. 915, 90 S.Ct. 918, 25 L.Ed.2d 95 (1970). While a state procedure in the nature of a Declaratory Judgment action was available to the Trustee after Stafos filed his homestead claim (K.S.A. § 60–1701 et seq.), this does not detract from the fact that the federal district court had exclusive jurisdiction of the *subject matter*. In Re Cummings, *supra*; Texaco, Inc. v. Pruitt, 396 F.2d 237 (10th Cir. 1968). While dictum and therefore not directly controlling, we note that the following language from Sarahas v. Fenlon, 5 Kan. 592 (1870) has not been repudiated by subsequent Kansas decisions:

[H]e [the owner] could hold but one acre as a homestead, exempt from execution, no matter whether it was worth $10 or $10,000, or whether it was used for farming purposes or

on: *Provided,* The provisions of this section shall not apply to any process of law obtained by virtue of a lien given

by the consent of both husband and wife: . . .

was covered all over with palatial residences. One acre is all that is exempt as a homestead under the Constitution. If he lived on that part in the city, that acre would be his homestead, and the residue of the city property, as well as his land in the country, would be subject to forced sale under execution. This is the plain letter of the Constitution; . . . 5 Kan. 592 at 596.

■■■ The decision of the federal trial court as to the law of the state where he is sitting will be accepted on appeal unless clearly erroneous. Industrial Indemnity Company v. Continental Casualty Company, 375 F.2d 183 (10th Cir. 1967). Certainly Sarahas v. Fenlon, *supra*, weighs heavily in favor of the trial court's application of Kansas law. One court has held that in the absence of ascertainable state court interpretation, the bankruptcy court must construe the statute and determine its application. Doethlaff v. Penn Mut. Life Ins. Co., 117 F.2d 582 (6th Cir. 1941), cert. denied 313 U.S. 579, 61 S.Ct. 1100, 85 L.Ed. 1536 (1941). In addition, the rights of creditors have been held in "limbo" awaiting resolution of this exemption issue for more than two years. This case does not present all of those "special circumstances" dictating the imposition of abstention as in Kaiser Steel Corp. v. W. S. Ranch Co., 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), and Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

Stafos alleges that the trial court erred, as a matter of law, in adopting the findings and conclusions of the Referee. He contends that a farming homestead is exempt from forced sale under any process of law and cannot be alienated without the joint consent of husband and wife even though it was annexed to the City without depriving him of due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. He alleges that he had a vested interest in the 13.2 acres as a *farming land* homestead within the meaning of the Kansas Constitution prior to the passage of the City Ordinance incorporating the 13.2 acres because he and his wife owned the property as joint tenants.

■■■ The test of our review is prescribed under Rule 52, Fed.R.Civ.P., as required by 11 U.S.C.A. § 47(b) and Bankruptcy Gen.Order 36, 28 U.S.C.A., which specifically provide that the United States Courts of Appeal shall exercise appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in the form and manner of an appeal in civil actions, including Rules of Civil Procedure for the District Courts.

> The question for the appellate court under Rule 52(a) is not whether it would have made the findings the trial court did, but whether "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969).

The same rule applies in cases involving constitutional rights. Williams v. Eaton, 468 F.2d 1079 (10th Cir. 1972). If a trial court adopts a Referee's findings and conclusions, they are thereby adopted and approved as its own. Earhart v. Callan, 221 F.2d 160 (9th Cir. 1955), cert. denied 350 U.S. 829, 76 S.Ct. 59, 100 L.Ed. 740 (1955). Under Bankruptcy General Order 47, 28 U.S.C.A., the Trial Court is bound to accept the Referee's findings of fact unless they are clearly erroneous. Moran Bros., Inc. v. Yinger, 323 F.2d 699 (10th Cir. 1963). The "clearly erroneous" rule does not apply on questions of law or on mixed questions of fact and law. See cases cited in 9 Wright & Miller, Federal Practice and Procedure: Civil §§ 2588, 2589; Wright, Law of Federal Courts, 2nd Ed., § 96. However, in our Circuit it is settled law that the views of a Federal Dis-

trict Judge, who is a resident of the state where the controversy arose in a case involving interpretations of the law of that state, carry extraordinary persuasive force on appeal, if the Court of Appeals is not aided in its consideration by either administrative interpretation or judicial expression from state courts. Hardberger and Smylie v. Employers Mutual Liability Insurance Company of Wisconsin, 444 F.2d 1318 (10th Cir. 1971); Hamblin v. Mountain States Telephone and Telegraph Company, 271 F.2d 562 (10th Cir. 1959); Bradshaw v. Superior Oil Co., 164 F.2d 165 (10th Cir. 1947).

■ The Referee and the Trial Court relied on the weight of case authority in limiting Stafos to a one-acre homestead exemption which must include the "home" or "residence" of the family, by specific reference to the general rule set forth in 40 C.J.S. Homesteads § 58:

While there is authority to the contrary, in most jurisdictions where the question has been raised it has been held that, even without the owner's consent and against his wishes, the limits of a city, town, or village may be extended so as to include what was formerly a rural homestead and to afford the owner only the amount available as an urban homestead. Where the mere fact that land lies within the boundaries of the city, town, or village, is not regarded as necessarily stamping it with the character of urban property for homestead purposes, as discussed supra § 53, it is necessary, in order that the owner shall lose the right to a rural homestead and be restricted to the right to an urban homestead, that the land, in addition to being embraced within the extended municipal limits, shall be otherwise actually impressed with an urban character. . . .

We specifically concur with the findings of the Referee and Trial Court that although the Stafos acreage remains unplatted, that neither the Kansas Constitution nor statutes require that the land

incorporated be platted or laid out for urban purposes in order to be impressed with urban character. There is substantial evidence supporting the finding that the character of the Stafos acreage is urban and that his homestead should be limited to one acre after annexation. Nothing expressed in the Kansas Constitution, Article 15, § 9, K.S.A. § 60–2301, or the Kansas decisions which we have reviewed in detail convince us that the trial court committed error. United States v. Jones, 229 F.2d 84 (10th Cir. 1955).

Affirmed.

MURRAH, Circuit Judge (concurring specially):

I readily concur in the ultimate result reached in this case but I am unable to agree with the reasoning by which my brethren reached that result. In my view the lawsuit is more simply stated and decided, and I am, therefore, constrained to briefly state my views.

When the bankrupt acquired his 13.2 acres of land, it was outside the city limits of Kansas City, Kansas. He was living on the land as his homestead and truck farm when it was annexed and brought within the city limits, and was so using it when this proceeding was commenced, although the land had been zoned for urban industrial use. He claimed all of the 13.2 acres as his homestead exemption. The referee and the trial court allowed only one acre under the provisions of the Kansas constitution and statute, which provide that "[a] homestead to the extent of one hundred sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, . . . ."

In his brief the bankrupt concedes that the referee correctly stated the question involved, as follows: "Did the extension of the city limits, annexation and incorporation of the entire tract of

13.2 acres into the city of Kansas City, Kansas, subsequent to the ownership and occupancy of the entire tract as a homestead by the bankrupt and his family outside the limits of an incorporated town or city, limit the homestead exemption to one acre?" The bankrupt answers that the extension of the city limits to include his homestead did not operate to "eliminate" or "alienate" his homestead rights in the 13.2 acres. His argument is not entirely clear, but, as we read it, it is twofold: (1) the land continued to be occupied and used for farming purposes, and was, therefore, exempt as farming land, although incorporated within the city limits and zoned for urban industrial use; and (2) any other construction of the Kansas constitution and laws would operate to deny him Fourteenth Amendment due process.

Indisputably the bankrupt is entitled to claim a homestead exemption prescribed by the law of the State of Kansas, but the power of the city to annex the property, even without the consent of the owner, is unquestioned. The question is, as the referee stated, whether inclusion in the city limits can be said to reduce the quantity of the homestead rights from 13.2 acres to one acre. As thus reduced the homestead admittedly remains inviolate.

The homestead provisions of the Kansas constitution and statutes came on for consideration before the Supreme Court of Kansas about one hundred years ago in Sarahas v. Fenlon. In that case the lands claimed as a homestead exemption were partly within and partly without incorporated city limits. The lands within the city limits were sold on execution, and the question reaching the Supreme Court was whether the husband-wife owners could claim the city property as their homestead exemption. The Supreme Court held that they could not claim any of the city property as

their homestead, simply because they did not live on it. But the court did not stop there. It went on to say that "even if the claimant lived on that part of the land within the city, he could hold but one acre as a homestead, exempt from execution, no matter whether it was worth $10 or $10,000, or whether it was used for farming purposes or was covered all over with a palatial residence. One acre is all that is exempt as a homestead under the constitution. If he lived on that part in the city, that acre would be his homestead, and the residue of the city property as well as his land in the country would be subject to forced sale under execution. This is the plain letter of the constitution; it cannot be enlarged by construction or made plainer by argument." As far as we can find this unequivocal dictum has never been repudiated or challenged in any court since its pronouncement.

After canvassing the legal effect of the use to which the land was put on the quantity of the exemption, the referee finally concluded that regardless of the value, the use or the zoning classification, the Kansas constitution controlled, and that it meant just what it said, to wit: Since at the time of bankruptcy the 13.2 acres were within the limits of an incorporated city, only one acre was exempt as a homestead. I agree that the mandate of the constitution is too clear for mistake or debate. In this view there is no justification whatsoever for abstention. This is a *Meredith* case, not a *Kaiser Steel* case. But even if there was any room for interpretation the word of the Kansas judge, recently of the Supreme Court of that State, is quite good enough for me. *See* United States v. Hershberger, 475 F.2d 677 (10th Cir., filed Mar. 13, 1973). Beyond stating the point there is no argument in the brief on the due process question and I will leave it there.