**In re Steve Mitchell HARVEY and Angela Renee Harvey.**

**Steve Mitchell Harvey and Angela Renee Harvey, Appellants,**

v.

**Mark H. Flener, Trustee, Appellee.**

Bankruptcy No. 97–11741(1)7.

Civ.A. No. 1:98CV–203–A.

United States District Court,
W.D. Kentucky,
Bowling Green Division.

Sept. 21, 1999.

John C. Rogers, Glasgow, KY, for Appellants.

Mark H. Flener, Bowling Green, KY, for Mark Flener, Trustee.

### MEMORANDUM OPINION

ALLEN, Senior District Judge.

This case presents appellants' claim that United States Bankruptcy Court for the Western District has exceeded its authority in setting a time limit on motions to avoid liens. The Trustee has elected not to file a brief. After examining appellants' arguments, the materials of record and the applicable authorities, we are of the opinion that the decision of the Bankruptcy Court should be reversed.

Appellants filed a Chapter 7 petition December 11, 1997. They were granted discharge on March 25, 1998. On October

7, 1998, debtors sought to reopen the case in order to pursue a lien avoidance, stating "Unbeknownst to Debtors, a judgment lien remained on Debtor's property." Bankruptcy DN 9. Two days later, relying on the rule announced in *In re Hunter,* 164 B.R. 738 (Bankr.W.D.Ky.1994), the Court overruled the motion to reopen.

*In re Hunter, supra,* involved an attempt to reopen (for purposes of avoiding a lien) seven years after discharge. The Bankruptcy Court analyzed the reasons for drawing a distinction between inadvertent omission of a creditor and the failure to exercise a right granted by 11 U.S.C. § 522, pointed to the other courts that had established time limits for lien avoidance proceedings, and adopted the current limit: "All motions to avoid liens shall be filed not later than sixty (60) days following the first date set for the meeting of creditors held pursuant to § 341(a)."

In the present case, the Harveys listed Terry Simpson d/b/a/ S & S Vinyl Siding & Gutters as an unsecured creditor, based on the judgment he had obtained against them in July of 1997. They were unaware that on October 20, 1997, Simpson had sent a notice of judgment lien to the address where they lived in 1994. In September, six months after discharge, the Harveys applied to refinance their home and learned of the existence of the judgment lien. They promptly filed their unsuccessful motion to reopen. Simpson has taken no steps to enforce his lien.

The facts of the present case obviously differ dramatically from those in *Hunter* with regard to the length of the delay, the reason for the delay, and the effects of the delay; however, the *Hunter* rule appears to prevent the Bankruptcy Court from discovering the existence of those differences. As applied, it appears to function not as a presumption, but rather in the nature of a jurisdictional rule. By imposing such a rule, the Bankruptcy Court purports to preclude any judge's consideration of the merits of a motion such as that presented by appellants.

Appellants argue that the sixty day rule precludes any judge of the Bankruptcy Court for the Western District of Kentucky from exercising his or her sound discretion to reopen cases, a discretion granted by 11 U.S.C. § 350(b). They contend that the preferable approach is that adopted by Judge Lee of the Eastern District of Kentucky, applying in this situation as well as in others the familiar rule that exemption statutes are to be liberally construed in favor of the debtor. *In re Lynch,* 187 B.R. 536, 550 (Bankr.E.D.Ky. 1995), citing *Doethlaff v. Penn Mut. Life Ins. Co.,* 117 F.2d 582 (6th Cir.1941).

*In re Nylon Net Company,* 225 B.R. 404 (Bankr.W.D.Tenn.1998), (a reopening case that did not involve lien avoidance) the court rejected per se rules—either those that consistently allowed reopening of closed cases or those that never allowed reopening—in favor of allowing reopening depending on the facts of the case. In so doing, the court adopted the reasoning of *Hawkins v. Landmark Finance Co.,* 727 F.2d 324, 326 (4th Cir.1984): "The [reopening] statute is phrased in permissive language, and we think that it would do violence to the statute either to say that a closed case must be reopened or that a closed case may never be reopened."

In *Rheinbolt v. Credit Thrift of America, Inc.,* 24 B.R. 167 (Bankr.S.D.Ohio 1982), the purpose of the proposed reopening was lien avoidance. The court discussed the case of *In re Adkins,* 7 B.R. 325 (Bankr.S.D.Cal.1980), which had held that the deadline for filing lien avoidance proceedings was the date of the discharge hearing, and observed that the *Adkins* rule had not been followed by the majority of courts and had been "subjected to considerable judicial criticism." *Id.* at 169. The *Rheinbolt* court noted that the legislative history of the then-applicable statutory provision, "does not address directly the issue of a debtor reopening a case to avoid liens, it clearly contemplates that a trustee will be permitted to reopen a case in order

to utilize his avoiding powers." *Id.* at 170. Ultimately, *Rheinbolt* concluded that equitable considerations should control such reopening decisions:

> Much of our reluctance to impose a deadline for the filing of complaints to avoid liens is rooted in traditional notions of fairness regarding notice of such time limitations. But this equitable policy, which favors debtors, must be tempered by considering the position of creditors.... Where a creditor has [detrimentally changed its position], it becomes necessary to balance the parties' competing equities.

24 B.R. at 170.

■ There is much to be said for efficiency, and it is true that a firm rule is generally more efficient than a case by case analysis. Nonetheless, the primary reason for creating courts, particularly courts of equity, is not efficiency, but justice. In granting authority to reopen cases for reasons specified in the statute as well as others, Congress stated its intention that finality not be the sole consideration in the quest for justice. Congress did not impose a statute of limitations, either on reopening the case in general or on motions to avoid liens in particular; thus, we must rely on laches—an equitable concept—to address such matters. The undersigned is of the opinion that the statutes, the legislative history, and the theory underlying the doctrine of laches, all contemplate an exercise of discretion that is completely precluded by the rule raised as a bar to the appellants in this case.

If equitable considerations (as opposed to the *Hunter* rule) were applied to the Harveys' situation, we believe the outcome would be different. Indeed, if the facts as represented here are found to be accurate—i.e., ignorance of the lien and no suggestion that the Harveys misled the lien-holder regarding their address, a relatively short time period between the closing of the case and the motion to reopen, no delay in filing the motion to reopen upon discovery of the lien, and no detrimental reliance on the part of the creditor—we would be inclined to see an abuse of discretion in a laches-based refusal to reopen for purposes of lien avoidance.

An order in conformity has this day entered.