GRACE J. ROSS v. MINNESOTA MUTUAL LIFE INSURANCE
COMPANY.
FIRST NATIONAL BANK OF BEAVER CREEK,
APPELLANT.[1]

January 5, 1923.

No. 23,222.

**Husband may insure life for benefit of his family without fraud on his
creditors.**

1. An insolvent husband may insure his life and devote a moderate
portion of his earnings to the payment of premiums thereon, for the
benefit of his wife and dependent children, without thereby being held
to intend to hinder, delay or defraud his creditors.

**Creditors must prove fraud in action to recover premiums.**

2. To maintain an action on behalf of the creditors of a deceased
husband, to recover premiums paid by him while insolvent in order to
provide for his family after his death, fraud must be not only alleged
but proved.

**Finding in favor of family sustained by evidence.**

3. Evidence considered and *held* sufficient to justify the finding that
the insurance was not unreasonable in amount, that it was procured
and the premiums paid thereon in good faith for the protection of the
wife and children of the insured after his death, and that there was
no intent or purpose on his part to defraud his creditors.

**Widow held to own policy and not as trustee of creditors—partial assign-
ment fraudulent.**

4. The proofs justify the finding that the plaintiff was the owner of
the proceeds of the $6,000 policy in her own right, and not as trustee
for the creditors of the insured, and that the assignments of $2,000 of
such insurance to the defendant bank were procured by fraud and
without consideration.

**Evidence received subject to future ruling of admissibility.**

5. Where evidence is received upon a trial, subject to a future rul-
ing on its admissibility, the party wishing to avail himself thereof

[1]Reported in 191 N. W. 428.

should, at the proper time, secure a ruling thereon so that it may appear of record.

Action in the district court for Rock county to recover $11,000 upon two life insurance policies. The motion of defendant Minnesota Mutual Life Insurance Company that First National Bank of Beaver Creek, Orland Ross and Ivan G. Ross be substituted as defendants, was granted. The case was tried before Nelson, J., who made findings and ordered judgment in favor of plaintiff. From an order denying its motion for amended findings and for a new trial, First National Bank of Beaver Creek appealed. Affirmed.

*Hansen & Engan, A. M. Freeman* and *Parliman & Parliman,* for appellant.

*Canfield & Michael,* for respondents.

QUINN, J.

Plaintiff and Charles H. Ross, now deceased, were husband and wife and resided with their 9 children on a farm near Beaver Creek, in Rock county. The defendant, Minnesota Mutual Life Insurance Company, issued two policies to the deceased, one for $5,000 on March 29, 1918, and one for $6,000 on June 30, 1920, in each of which the plaintiff was named as the sole beneficiary. The husband was insolvent at the time the two policies were issued, as well as at the time of his death, which occurred on July 15, 1921. This action was brought against the company to recover upon both policies. The company answered, and thereafter paid into court, to await the outcome of the litigation, the amount of the face of both policies, less $240, the amount of the annual premium on the second policy, which fell due about the time of the death of the insured, and asked that the First National Bank of Beaver Creek, Orland Ross and Ivan G. Ross be substituted as defendants and allowed to assert their claims to the money so paid into court. An order was accordingly made substituting said parties as defendants and the insurance company withdrew from the case. A notice of the substitution was then served upon the Ross boys, but they did not appear or answer. The cause was tried to the court upon the complaint.

answer of the bank and reply. The court made findings of fact, and ordered judgment in favor of the plaintiff. From an order refusing to amend the findings and denying its motion for a new trial, the defendant bank appeals.

The appellant urges three general propositions why the defendant bank is entitled to recover in this action and why a new trial should be granted, viz: First that, during the period from the time of the issuance of the first policy to the time of his death, the insured was insolvent, and that the payment of the premiums on said policies was in fraud of his creditors, and that by reason thereof the appellant bank, a creditor, is entitled to recover from the proceeds of the policies, the amount of the premiums so paid; second, that the insured, on June 29, 1921, requested the insurance company to change the beneficiary in the $6,000 policy, so that the plaintiff would receive $4,000 thereunder, Ivan G. Ross, $1,000, and Orland Ross $1,000, and that the said Ivan G. and Orland Ross, thereafter assigned the $2,000 payable to them as such beneficiaries, to the appellant bank; third, that the policy for $6,000 was issued to the plaintiff for the purpose of creating a trust in behalf of the creditors of the insured, and that she did, by reason thereof, become such trustee, and that the plaintiff has no special or personal interest in or to the proceeds of said policy.

The annual premium on the policy for $5,000 was $174, and the amount paid on that policy was in the aggregate $696. But one annual premium had been paid on the policy for $6,000 prior to the death of the insured, namely, $240, paid at the time of the issuance of the policy. Section 3465, G. S. 1913, provides as follows:

"Whenever any insurance is effected in favor of another, the beneficiary shall be entitled to its proceeds against the creditors and representatives of the person effecting the same. All premiums paid for insurance in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy, if the company be specifically notified thereof in writing before payment."

It is not contended that the insured was guilty of any actual fraud, or that he entertained any fraudulent intent in taking out

either of the policies in question, or in paying any of the premiums thereon. The contention of appellant is that under the statute and in view of the insolvency of the insured, the payment of such premiums amounted in law to a fraud on his creditors, without reference to the motive or actual intention of the insured, and without regard to the amount of the insurance or premiums paid.

We are unable to agree with this contention. There being no claim or proof of any actual fraud, the question presented is whether the obtaining of the insurance, or payment of the premiums, while the insured is insolvent, is, in itself, necessarily a fraudulent transfer of his property with intent to hinder, delay and defraud his creditors, within the meaning of the statute. It will be observed that the statute does not attempt to define what shall constitute fraud. That it includes both actual and constructive fraud will hardly be questioned. One of the highest duties of a husband and father is to provide for his family during his life, and to make provision for it after his death. To this end he may devote a moderate portion of his earnings to insure his life, in favor of his wife, and so make reasonable provision for the future, without thereby being held to have intended to defraud his creditors, even though he was insolvent when he effected the insurance or paid the premiums. To maintain an action on behalf of the creditors of a deceased husband, to recover premiums paid by him, while insolvent, in order to provide for his family after his death, fraud must not only be alleged but proved. However, in such cases, a fraudulent intent may be shown to exist, or may be inferred, from surrounding circumstances. Notes: 29 Am. St. 360; 87 Am. St. 489; 12 R. C. L. p. 510.

In Central N. Bank of Washington v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. ed. 370, the Supreme Court held, speaking through Chief Justice Fuller [at page 211], that:

"This argument in the interest of creditors concedes that the debtor may rightfully preserve his family from suffering and want. It seems to us that the same public policy which justifies this, and recognizes the support of wife and children as a positive obligation in law as well as morals, should be extended to protect them from destitution after the debtor's death, by permitting him, not to ac-

cumulate a fund as a permanent provision, but to devote a moderate portion of his earnings to keep on foot a security for support already, or which could thereby be lawfully obtained, at least to the extent of requiring that, under such circumstances, the fraudulent intent of both parties to the transaction should be made out."

In that case it was further held, in effect, that an insolvent husband may insure his life and keep such insurance alive for the benefit of his family, without thereby being held to intend to hinder, delay or defraud his creditors, and after his death they will have no interest in the proceeds of the policy. Baron v. Brummer, 100 N. Y. 372, 3 N. E. 474; Pinneo v. Goodspeed, 120 Ill. 524, 12 N. E. 196; Johnson v. Alexander, 125 Ind. 575, 25 N. E. 706, 9 L. R. A. 660; Chapin v. Fellowes, 36 Conn. 132, 4 Am. Rep. 49; Harvey v. Harrison, 89 Tenn. 470, 14 S. W. 1083.

In the instant case the trial court found from the evidence, as matters of fact, that from the time of the issuance of the first policy to the time of his death, the insured was insolvent; that the defendant bank was one of his creditors; that the insured paid premiums on said policies to the amount of $963; that, in procuring said insurance and in paying the premiums thereon, there was no fraudulent intent or purpose on the part of the insured to hinder, delay or defraud his creditors, but that he procured the same and paid the premiums thereon in good faith for the future protection of his wife and family; that the amount of such insurance was not excessive or unreasonable for the protection of the widow and minor children of the insured; that there was no change of beneficiaries in said policies or either of them; that the writing signed by the two individual defendants, requesting the payment of $2,000 of the proceeds of said policies to the defendant bank was without consideration, procured by fraud, and void, and that the plaintiff was the owner and entitled to receive the whole of said insurance. We think the findings are amply supported by the proofs. Plaintiff was left without a home of any sort and without any means of support, save her ability to labor; the children were all minors excepting one; six were wholly dependent upon the plaintiff and the

other minor ones were partially so. Under such circumstances we see no reason for disturbing the conclusions arrived at by the learned trial court in relation thereto.

Under the foregoing holding there is nothing to the second contention made on behalf of appellant, that it is entitled to $2,000 of the proceeds of the second policy through the pretended assignment thereof by the Ross boys September 19, 1921, for the reason that they had no interest in the insurance which they could assign. The same is true as to the third contention with reference to the so-called trust. If the insured procured the policies and paid the premiums thereon in good faith for the future protection of his wife and children and there was no change in the beneficiary, then the wife was in no sense a trustee for the creditors.

Upon the trial appellant offered in evidence the reply which plaintiff made to the answer of the insurance company, which was objected to and received with the statement from the court that he might change his ruling afterward. The record does not show that any other ruling was made thereon. This evidence was offered for the purpose of showing the insolvency of the insured, which was conceded throughout the trial by both parties.

Upon the trial P. M. Crawford, a stockholder in the defendant bank, was called as a witness by the appellant and was asked to state a conversation which he had with the deceased relative to the beneficiary to be named in the policy for $6,000. This question was objected to as being incompetent, irrelevant and immaterial and asking for a conversation between the witness, who was interested in the event of the suit, and a deceased person. The evidence was received subject to a future ruling on its admissibility. It does not appear from the record that any ruling was thereafter made. It is a well established rule in this state that, if evidence is admitted subject to a future ruling on its admissibility, the party wishing to avail himself thereof should renew his objection at the proper time and secure a ruling thereon. See cases cited, 3 Dunnell, Minn. Digest, § 9737. The evidence offered was clearly objectionable under the statute. We discover no prejudicial error in the other rul-

ings of the court upon the admissibility of evidence, to which objection was made.

Affirmed.

DIBELL, J. (concurring in result.)

I concur in the result. The testimony of Crawford, a stockholder of the appealing bank, relative to his conversation with the deceased concerning the $6,000 policy, was received and the ruling reserved. No ruling was subsequently made. His testimony is either in, to be weighed in reaching a conclusion, or not in and not to be considered. There is no ruling on the question of competency for review on this appeal. Besides, the plaintiff, who says the evidence was incompetent, is not an appellant. My understanding is that the testimony is in. Considering it so the court was not in error in refusing to find as requested by the fifth proposed finding that the deceased when he took the $6,000 policy created a trust for his creditors with the plaintiff as trustee. Conceding without holding that a trust of such character can be created by parol, at variance with the terms of the policy, the testimony of Crawford, though it be accepted as literally true, falls short of requiring such a finding. In my judgment it shows no more than an unexecuted purpose, when he first negotiated for the insurance, to protect his creditors, not communicated to his creditors, not constituting an agreement with anyone, coupled with a suggestion that "he would name his wife to pay his creditors," and he did not do it.