## M. S. COOK AND ANOTHER v. PRUDENTIAL INSURANCE COMPANY OF AMERICA AND ANOTHER.[1]

February 13, 1931.

No. 28,266.

*Theodore Hollister* and *Lathers & Hoag,* for appellants.

*Crassweller & Crassweller,* for respondent Prudential Insurance Company.

*Sam J. Levy,* for respondent Mae Mann.

HILTON, J.

Plaintiffs, a partnership, appeal from an order denying their motion for a new trial.

This is an action (1) to have the proceeds of certain life insurance policies upon the life of Morris Mann (with defendant. Mae Mann,

[1]Reported in 235 N. W. 9.

his wife, named therein as beneficiary) declared the property of and payable to plaintiffs to the extent of $1,962 with interest from the 10th day of April, 1928; (2) for the recovery by plaintiffs of a judgment against defendants ordering and directing that said portion of the proceeds be paid to them. The case was tried to the court without a jury. Judgment was ordered in favor of defendants.

The findings of fact are here summarized. Morris Mann of Duluth, Minnesota, on August 28, 1924, became the agent of defendant Prudential Insurance Company of America (hereinafter referred to as the company) for the sale of life insurance on a commission. This relationship continued until his death by suicide on May 24, 1928. During the last half of 1926 the commissions paid him amounted to $1,939.87; during the year of 1927, $6,568.24; and from January 1 until his death, $741.65. In addition to these earnings during 1927 he received $300 as expense money and $125 for the first five months of 1928; there was also paid to the representative of his estate the sum of $643.60 as deferred commissions. (Commissions paid to him during 1925 and the first half of 1926 are not disclosed by the evidence.)

During the time of his employment certain life insurance policies were taken out by him in the company as follows: One on June 30, 1925, $5,000; one on December 1, 1925, $4,000 (group insurance); two on January 11, 1927, $6,000 each; one on December 20, 1927, $10,000. Some of these policies had special provisions covering accidental death and total disability. During the time the policies were in force quarterly premiums were paid on each, except the second one, on which monthly premiums were paid.

The total of premiums paid during a year on the first four policies amounted to $237.20. On the fifth policy, which had only run a few months, the annual payments for a year would have amounted to $169.60. Because the $10,000 policy contained a provision that if assured committed suicide within one year after issuance it should be void, the company disclaimed liability but did settle the claim thereon for $3,000.

Each of the $6,000 policies provided that upon the death of assured the face thereof should be paid in 60 monthly instalments of $100 each. Mann and his wife had one child. Mann reserved in each of the policies the right to change the beneficiary. Mae Mann paid none of the premiums; (a tabulated statement of the checks with dates and amounts drawn by Mann on his bank account in payment of the premiums appears in the amended findings).

After taking out the insurance above referred to and between February 11 and April 10, 1928, Mann sold, transferred, and indorsed to plaintiffs what purported to be nine promissory notes payable to his order, the face value of which amounted to $1,962.40. These notes were discounted five per cent, and the actual payment made Mann therefor was $1,857.60. All of said notes were false and forged but not known by plaintiffs to be such, they believing them to be genuine. By means of such note transaction Mann defrauded plaintiffs of the amount paid to him, with interest thereon. No part thereof has been repaid to plaintiffs. On all of the dates on which said forged notes were purchased by plaintiffs, Mann was, and at all times thereafter until his death remained, insolvent.

At and after the time of the transfer and sale by him of said forged notes Mann stated to plaintiffs that he was carrying certain insurance on his life which would be payable on his death to his estate, which statement was false; but plaintiffs did not rely thereon in purchasing said forged notes and were not induced to purchase the same by such representation. (There was no request made by plaintiffs to see any such policy, much less to have it assigned or put up as a pledge.)

The court also found that no part of the moneys received from the sale and transfer by him to plaintiffs of said forged notes was used by Mann in payment of any part of the premiums of the insurance so taken out by him; that none of the insurance was purchased or kept in force by Mann with the intention of defrauding plaintiffs or any of his creditors; and that the amount paid by him as premiums was not unreasonable considering the amount of his earnings during said times.

Plaintiffs properly notified the company that they claimed the benefit to the proceeds of the premiums paid and of all policies issued to Mann to the extent of $1,962 with interest, asserting that the premiums were paid by said Mann from moneys procured from them through the fraudulent sale of said notes. Upon the findings of fact the court held that plaintiffs were not entitled to payment of any of the indebtedness of Mann to them out of the proceeds of any of the policies and that defendants were entitled to judgment. We have carefully read the evidence; it fully supports the findings of fact and conclusions of law drawn therefrom.

We agree with the statement of the court in its memorandum:

"There is no proof of insolvency at the time any of the policies were taken out, unless possibly the last one in December, 1927, which was before plaintiffs became creditors, and also there is no proof of actual intent to defraud creditors generally at the time the insurance was purchased. Plaintiffs' counsel in their briefs [in the lower court] contend that some of the money procured from plaintiffs went toward the payment of premiums, but the proof is to the contrary."

In the memorandum there is then a detailed statement relative to the payment of premiums on policies after February 11, 1928, which statements are in accordance with the evidence. The books of the bank in which Mann's account was kept were in evidence and considered by the court. Mann had sold to plaintiffs other notes, all of which he had taken up before those here involved were sold to them. He also defrauded other people in 1928 by selling them false and forged notes. All of the fraud was perpetrated after his insurance policies had been issued.

The statutes referred to by the court in its memorandum are G. S. 1923 (1 Mason, 1927) §§ 3387 and 3388, which provide:

"3387. Whenever any insurance is effected in favor of another, the beneficiary shall be entitled to its proceeds against the creditors and representatives of the person effecting the same. All *premiums* paid for insurance in fraud of creditors, with interest thereon, shall

inure to their benefit from the proceeds of the policy, if the company be specifically notified thereof in writing before payment." (The benefit inuring was simply premiums paid after plaintiffs bought the forged notes, which amounted to only $108.20.)

"3388. Every policy made payable to, or for the benefit of, the wife of the insured  *  *  *  shall inure to her separate use and that of her children, subject to the provisions of § 3387."

As also showing the policy of this state in protecting the widow and children of a deceased policyholder, we refer to G. S. 1923, § 9447, as amended, 2 Mason, 1927, id. which provides for property exemptions. Paragraph 14 thereof reads:

"All moneys received by, or payable to, a surviving wife or child from insurance upon the life of a deceased husband or father, not exceeding ten thousand dollars."

Defendants call attention to the nonassignability provision of the policy. As the case is decided on other grounds that feature need not be considered.

Among the many cases that might be cited supporting the order for judgment in this case are the following: Ross v. Minnesota. M. L. Ins. Co. 154 Minn. 186, 191 N. W. 428, annotated in 31 A. L. R. 46; Murphy v. Casey, 150 Minn. 107, 184 N. W. 783; Bennett v. Rosborough, 26 A. L. R. 1397 (annotated).

Many statements in numerous cases cited by appellants are good law as applied to the facts therein but are not in point in the situation here presented by the record. There were no trust funds involved in this case, nor any relationship of the parties that brings it within the rules laid down in some of appellants' citations.

Order affirmed.