# STATE BANK OF NEW LONDON v. SWEN G. SWENSON AND OTHERS.[1]

May 29, 1936.

No. 30,815.

George L. Barnard, for appellants.
George H. Otterness and Fosnes & Rolloff, for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff prevailed below in its suit to set aside as fraudulent a certain conveyance of real property. The court denied defendants' motion for new trial, and the appeal is from that order.

Appellants, Swen G. and Guri Swenson, are husband and wife. Defendant Mildred Davis has not appealed. We shall refer hereafter to appellants as if they were the only defendants.

[1]Reported in 267 N. W. 366.

Plaintiff bank was the owner and holder of certain promissory notes executed by defendant Swen. These notes antedated the transfer of real estate hereafter to be mentioned. The notes were reduced to judgment March 20, 1935; the amount thereof is $1,282.33.

On September 9, 1934, Gunder Swenson, father of defendant Swen, died testate leaving certain real property of which said defendant received an undivided one-twelfth interest under the terms of the will. On December 5, 1934, defendants husband and wife joined in executing a deed to defendant Mildred Davis. She in turn reconveyed to Guri, wife of Swen. There was in fact no consideration for either conveyance. There is no controversy about it. The transfer was in the usual and customary method employed when a married man conveys land to his wife.

The only question presented is whether the evidence sustains the trial court in finding that the transfer was fraudulent in fact. Defendants contend that there was an adequate consideration passing from the wife to the husband and that as such the court was wrong in coming to the conclusion it did.

The facts upon which defendants rely are these: About 21 years ago Guri claims to have received $298 from her father's estate. Something like six or seven years later she claims to have received between $240 and $250 from the estate of an uncle. These respective sums were turned over as loans to her husband, who used the money for his own purpose. No note or memorandum was ever made of the transaction. No interest was mentioned. It is not claimed that the wife ever listed these loans for taxation under the moneys and credits tax, or at all. Nothing was done about the matter until 1930, when, so defendants say, the husband executed a bill of sale to his wife of substantially all of his personal property on the farm. This transfer was made in liquidation of these alleged loans, then computed with interest to amount to $1,140. The bill of sale was filed in the office of the register of deeds of the county in which they reside. There was no change respecting the use or possession of the property. It remained as before upon the husband's farm and was used as it had been theretofore. On cross-examination he testified, respecting the income from the cows and other property claimed to have been sold, as follows:

Q. "* * * you still get all the income from this property, don't you, from personal property and all?

A. "Yes, sir.

Q. "Cream checks and all?

A. "Yes.

Q. "And as far as the location and the possession of this personal property is concerned, it is just the same now as it was before you gave her the bill of sale?

A. "Yes."

Later, on redirect examination, defendants' counsel asked:

Q. "You say the cream checks. Do they come to you, made to you?

A. "No.

Q. "Who are they made to?

A. "One of the boys."

In 1932 Guri executed a mortgage upon this personal property to another bank than plaintiff to secure a loan made by her husband in the sum of $760. The proceeds of the loan were used in liquidation of the husband's obligations to that bank; also in liquidation of a lumber bill. Later this loan was increased and renewed.

This in substance sets forth defendants' claims. Upon this proof they rely. The trial court found that these transfers were made without consideration, were fraudulent in fact, and made "for the purpose of defrauding plaintiff out of its claim"; also that the wife was a party thereto and had "full knowledge of said intent and purpose." Unchallenged is the finding that by this conveyance the husband became and has since remained insolvent.

2 Mason Minn. St. 1927, § 8478, provides in substance that every conveyance made by a person who will be thereby rendered insolvent is fraudulent as to creditors without regard to actual intent if the conveyance is made without a fair consideration. By § 8621 it is provided that where the rights of creditors come in question, "each spouse shall be held to have notice of the contracts and debts of the other as fully as if a party thereto."

Many cases have been before this court involving the issue here presented. Thus in Minneapolis Stock-Yards & Packing Co. v. Halonen, 56 Minn. 469, 471, 57 N. W. 1135, this court said:

"* * * it is well settled that such is the community of interest between husband and wife, and purchases and conveyances are so often made as a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and furnish such temptations for fraud, that they require close scrutiny.

"In a contest between the wife and the creditors of a husband there is, and there should be, a presumption against her which she must overcome by affirmative proof. Such has always been the rule of the common law, and the rule continues, though statutes have modified and changed the relations which at common law existed between husband and wife as to the property of the latter. Seitz v. Mitchell, 94 U. S. 580 [24 L. ed. 179]. Without going any further than is necessary for a determination of this case, we are of the opinion that where a judgment is upon a claim which accrued prior to a conveyance to his wife of property belonging to the debtor husband, which property the creditors are trying to reach, the burden of proof is upon the wife to show the purchase by clear and satisfactory evidence, and that it was for a valuable consideration, paid by her, or by some one in her behalf." Citing many cases.

And in Thompson v. Schiek, 171 Minn. 284, 287, 213 N. W. 911, 912, a case in many respects similar to the present, the court said, after reviewing prior cases:

"* * * although a wife may loan money to her husband and take security from him which will be valid against both prior and subsequent creditors of the husband, the mere fact that she lets her husband have her money to use is not sufficient as against his creditors. The contractual relations between him and her must appear by satisfactory evidences."

See also 3 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 3858, 3859, and cases cited under notes.

The parties appeared before the trial judge and submitted their claims to him. He as the trier of fact was much better equipped to determine the truth than are we sitting in review and having before us only the cold printed record. The burden of showing good faith of the transaction rested upon the wife. The proof furnished by her and in her behalf is far from being "clear and satisfactory." Rather, it is quite the contrary. The record leaves no doubt in our minds that the trial court was right, and its order denying a new trial is affirmed.