JOSEPH P. BRENNAN, EXECUTOR, SUBSTITUTED FOR MARGARET K. KENNEDY, DECEASED, v. WILLIAM H. FRIEDELL AND ANOTHER.[1]

February 20, 1942.

No. 33,109.

[1]Reported in 2 N. W. (2d) 547.

■■■■■■■■■■■

*Richard Manahan,* for appellants.
*Christensen & Ronken* and *J. L. Plemling,* for respondent.

JULIUS J. OLSON, JUSTICE.

In a suit to set aside as fraudulent a transfer of certain bank stock from an insolvent husband to his wife, plaintiff prevailed. (The suit was brought, heard, and determined while Margaret K. Kennedy was living. Before entry of judgment she died, and Mr. Brennan, as representative of her estate, was substituted in her place. We shall refer to the parties as they were at the time of trial.)

The court found that on January 30, 1933, plaintiff recovered a personal judgment against defendant William for $5,459.12. At least two executions were issued to enforce collection, but these turned out to be fruitless. During this time and until January 26, 1937, William was the owner of 37 shares of stock in a named bank. On that day he assigned the certificate to his wife, who promptly presented the certificate and assignment to the bank and procured a new certificate in her own name. William had no property, other than these shares, which could be reached on execution. This transfer was found to be "without fair consideration and had the effect of hindering, relaying, and defrauding his [William's] creditors, including the plaintiff herein, and that said stock was received by" the wife "with full knowledge of plaintiff's judgment," of her husband's "financial condition and with the effect said transfer would have upon his creditors." The court directed judgment that as between defendants the transfer was "fraudulent and void as to the plaintiff" and that William "is still the owner thereof." Defendants' alternative motion for amended findings or

a new trial was denied. Judgment was entered, and they jointly appeal. The only question presented is whether the record sustains the court's findings.

Over a period of nearly 50 years defendants have been husband and wife, except for a separation, culminating in divorce, which occurred more than 25 years ago. However, about two years after the divorce, a reconciliation and remarriage took place. Out of the divorce plaintiff claims that she received some $5,000 from her husband. This sum, together with an additional $1,000, she says she loaned to her husband to be used in the erection of a new hotel building, the title to which was and remained his until 1933, when the site was acquired by the government as a post-office site. She testified, "Well, I turned over five thousand one time and then another thousand another time," but she did not "just remember the year." No note was given or asked for, and nothing was said about interest or time of repayment. Nor was any sum listed by her under the money and credits tax law or submitted for other taxation. Defendants operated the new hotel jointly, and each appears to have helped in its management and operation. When Tillie wanted or "needed some money she took various sums from the receipts from the business." She later built a home costing $7,600, the title to which was in her name, but this she claims came out of a $1,500 inheritance from her parents, partly from savings (although she said "I don't remember how much money I saved up"), and partly from sums withdrawn from hotel income. It probably appeared passing strange to the trial judge that this loan arrangement could run along in this fashion over a period of more than 18 years without any settlement or accounting.

On William's examination he testified that the bank stock, at the time of its transfer and ever since, represented his only non-exempt property. On cross-examination, in regard to his being indebted to his wife when this transfer took place, he testified:

Q. "I think you told me before that you thought that you had paid your wife in full?

A. "I said that I thought I did but she thinks I did not.

Q. "Well, you still think that you have paid her in full?

A. "Well, I don't know, I suppose she is as near right as I am."

1. It has long been settled law in this state by statutory enactment (Mason St. 1927, § 8478), as well as by our decisions, that every conveyance which will render the transferor insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made without a fair consideration. Likewise, by § 8621, it is provided that where the right of creditors come in question "each spouse shall be held to have notice of the contracts and debts of the other as fully as if a party thereto."

2. The problem here presented has been before this court in many cases. It is unnecessary to review them except again to refer to Thompson v. Schiek, 171 Minn. 284, 213 N. W. 911, and State Bank v. Swenson, 197 Minn. 425, 429, 267 N. W. 366, both of which are identical in principle to the factual background here presented. Here, as in the Swenson case, the parties appeared before the trial judge and submitted their claims to him. As the trier of fact, he was much better equipped to determine the truth than are we, sitting in review and having before us only the cold printed record. "The burden of showing good faith of the transaction rested upon the wife. The proof furnished by her and in her behalf is far from being 'clear and satisfactory.' Rather, it is quite the contrary."

3. Counsel should know that in cases involving only questions of fact, even where a finding can be made either way, we are powerless to interfere. Hackett v. Palon, 169 Minn. 218, 219, 210 N. W. 996, 997; Martens v. Martens, 211 Minn. 369, 372, 1 N. W. (2d) 356, 358. Here, even if possessed of that power, we would have to arrive at the same result as that reached by the trial judge. And this is so for the reason that (District of Columbia v. Murphy, 314 U. S. 441, 456, 62 S. Ct. 303, 310, 86 L. ed. [Advance Opinions] 277, 284), "One's testimony * * * is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness." And, as was said in Lunde v. Congoleum-Nairn, Inc. 211 Minn. 487, 490, 1 N. W. (2d) 606, 607: "Even though evi-

dence is not in conflict, yet if it is open to conflicting inference, the decision of the triers of fact is final. * * * The negative prevailed, a not unusual result where there is so much of reasonable inference against the affirmative."

Judgment affirmed.

