## PAULING v. PAULING.

No. 13400.

Circuit Court of Appeals, Eighth Circuit.

Jan. 6, 1947.

Rehearing Denied Jan. 31, 1947.
Writ of Certiorari Denied April 14, 1947

See 67 S.Ct. 1192.

L. A. Stebbins, of Chicago, Ill.(Henry C. Mackall, of Minneapolis, Minn., on the brief), for appellant.

Charles F. Noonan, of Minneapolis, Minn. (Dorsey, Colman, Barker, Scott & Barber, of Minneapolis, Minn., on the brief), for appellee.

532

Before THOMAS, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

Appellant was the first wife of John W. Pauling, deceased. Appellee was Pauling's second wife and is now his widow. On May 13, 1932, appellant obtained a divorce from John W. Pauling in an action brought by her in the Circuit Court of Cook County, Illinois. Shortly thereafter Pauling married appellee with whom he lived in Minneapolis, Minnesota, until his death intestate on January 17, 1945.

At the time of Pauling's death he and appellee held certain personal property of the approximate value of $16,500 as joint tenants and not as tenants in common, all of which under Minnesota law passed to appellee as surviving tenant, free from the claims of the heirs or creditors of Pauling. Irvine v. Helvering, 8 Cir., 99 F.2d 265, 269. There was also in effect at the time of Pauling's death insurance on his life in the sum of $55,756.90 payable to appellee as beneficiary. By Minnesota statute the proceeds of every policy of insurance made payable to or for the benefit of the wife of the insured inure to her separate use, free from the claims of creditors and representatives of the insured.[1]

Appellant is a creditor of Pauling's estate. She brought this action against appellee to subject the proceeds of the insurance on Pauling's life payable to appellee as beneficiary and the personal property held by Pauling and appellee as joint tenants to the payment of her claims against Pauling's estate, on the ground that the creation by Pauling of the joint tenancies in personal property and the payment of the premiums on policies of insurance payable to appellee were the result of a conspiracy between Pauling and appellee to effect fraudulent conveyances from Pauling to appellee, void as to Pauling's creditors. She appeals from a summary judgment in favor of appellee.

Appellant's claim that Pauling's estate is indebted to her is based on the provisions of the Illinois divorce decree. By that decree Pauling was required to pay the appellant alimony at the rate of $250 a month as long as she lived and did not remarry, and to keep in effect insurance on his life in the sum of $24,500 payable to appellant as beneficiary. The decree contained a finding by the court that Pauling and appellant had agreed that appellant should receive as alimony one-fourth of Pauling's annual income in excess of $12,000. However, that finding of the court was not included in the judgment for alimony. The court retained jurisdiction of the parties and of the subject matter of the action for the purpose of enforcing the provisions of this decree.

Pauling paid appellant $250 each month from the effective date of the divorce decree until his death. His gross income for the years 1936 to 1944, inclusive, exceeded $12,000, being on the average for the years mentioned approximately $18,000. He did not pay appellant in any year one-fourth of the amount by which his income exceeded $12,000 in addition to the $250 payable monthly awarded by the divorce decree. Appellant never made any inquiry of Pauling, nor sought information from any source, concerning the amount of his annual income and never during his life demanded of Pauling the payment of more than $250 per month as alimony.

When the divorce decree became effective Pauling was carrying insurance on his life in the sum of $39,500, apparently all payable to appellant as beneficiary. There were then in force three policies for $10,000, one for $5,000, and one for $4,500. Of this insurance, two policies for $10,000

---

[1] Minnesota Statutes 1945 and M.S.A. "§ 61.14. Proceeds of life policy, who entitled to. Whenever any insurance is effected in favor of another, the beneficiary shall be entitled to its proceeds against the creditors and representatives of the person effecting the same. All premiums paid for insurance in fraud of creditors, with interest thereon, shall

inure to their benefit from the proceeds of the policy, * * *.

"§ 61.15. Exemption in favor of family; change of beneficiary. Every policy made payable to, or for the benefit of, the wife of the insured, or after its issue assigned to or in trust for her, shall inure to her separate use and that of her children, subject to the provisions of section 61.14. * * *."

and one for $4,500 were either delivered to appellant by Pauling or were in her possession at the time of the divorce decree. Some time in 1934 Pauling obtained the $4,500 policy from appellant, promising to substitute therefor a policy for $5,000 payable to her as beneficiary. He failed to deliver the $5,000 policy to appellant according to agreement, although from 1934 through 1942 the appellant made many demands upon him for the $5,000 policy, and he made repeated promises to appellant to deliver it to her. The reason for Pauling's failure to return the $4,500 policy to appellant or to replace it with another is, under the evidence, left entirely to conjecture. What became of the $4,500 policy is not known to either of the parties to this action, nor can the name of the company which issued it be ascertained. Appellant never made any application to the Illinois court, which granted her divorce, for an order to compel Pauling to return to her the $4,500 policy, or to deliver in its place a policy for $5,000. Apparently because of these and other transactions relative to the insurance policies, as well as through their children, two sons 32 and 30 years of age at the time of the trial of this action, Pauling and appellant were in frequent and amicable communication from the time of the divorce until late in 1942, a period of more than 10 years. When Pauling died, he was carrying only two $10,000 policies of life insurance payable to appellant as beneficiary, on which premiums in the amount of $571.92 were due and unpaid, and this amount was deducted from the face of the policies by the insurance company in its settlement with appellant.

When Pauling died, he and the appellee owned as joint tenants, and not as tenants in common, two bank accounts in the sum of $2,700; United States bonds of an approximate value of $10,000; an automobile valued at $1,000; and certain certificates of corporate stock valued at $2,845. Appellee had contributed nothing to the acquisition of this property.

One of the bank accounts was a special account upon which checks were drawn for the payment of Pauling's income tax and special contributions, and the other was a general checking account. Apparently both bank accounts were derived from Pauling's current earnings. All of the United States bonds were acquired by Pauling after 1940 with the exception of four bonds of the face value of $100 each, purchased in 1937. The corporate stock was acquired some time in 1936.

Pauling left life insurance of which appellee was the beneficiary in the total amount of $55,756.90. This insurance consisted of five policies on Pauling's life of the face value of $35,000, subject to a loan of $1,850.13, on which Pauling had paid all of the premiums amounting to $21,503.98, exclusive of interest. In addition to this insurance, Pauling's employer, the Minneapolis-Honeywell Regulator Company, in 1943, included Pauling as one of the beneficiaries of an insurance retirement plan. The company paid into this plan the sum of $6,303.60 in 1943 and an equal amount in 1944. The plan provided that in the event of Pauling's death prior to the maturity of the plan the beneficiary designated by him would receive the amount of money paid in by the company. Appellee was designated by Pauling as the beneficiary of this plan, and the sum of $12,607.20 is payable to her as such beneficiary, but the manner and time of payment are within the control of the trustees nominated in the plan. Appellee was also the beneficiary of two certificates of group insurance carried by Pauling and the Minneapolis-Honeywell Company, one in the sum of $3,500 and the other in the sum of $6,500. The cost of this group insurance was paid mostly by the Minneapolis-Honeywell Company, Pauling contributing only an insignificant sum.

Of the five policies of life insurance on which Pauling paid the premiums, one policy for $10,000 was issued in 1926 and one policy for $5,000 was issued in 1928. In each of these policies the original beneficiary was appellant. Appellee was not made the beneficiary of either policy until the year 1940. Of the remaining policies in this group, one for $6,500 was issued in 1935, and one for $3,500 and one for $10,000 in 1937.

Appellant and appellee were never acquainted. Appellee had no actual know-

ledge of the terms of the divorce decree. She never saw the decree until after the institution of this action. She understood from Pauling that he was obligated by the decree to carry $20,000 of life insurance payable to appellant and to pay appellant $250 each month as permanent alimony. She knew that the premiums on the life insurance policies, as well as the monthly alimony, were regularly paid.

At the time of their divorce appellant was 48 and Pauling was 40 years of age. Appellee was 35 years of age when she married Pauling. At the time of his death Pauling was 53 and appellant was 61. Throughout his life Pauling was solvent. He met his financial obligations as they became due, unless, as the appellant claims, he failed to meet all liabilities imposed by the Illinois divorce decree. Until his death, which occurred suddenly as the result of a heart attack, Pauling, as far as he and appellee knew, was a man of sound health.

Appellant now asserts that by the terms of the Illinois divorce decree and on the ground that appellee is a fraudulent transferee of Pauling's property, appellant is entitled to recover from appellee $4,500 representing the value of the policy of life insurance obtained from her by Pauling; $571.92, the amount of unpaid premiums on the two $10,000 policies carried by Pauling and payable to her; $12,903.25 as one-fourth of Pauling's annual income in excess of $12,000 for the years 1936 to 1944, inclusive; and $33,883.25 as the present value of an income of $250 a month payable to her for life.

Since under Minnesota law appellee takes the property, held in joint tenancy by herself and Pauling, and the proceeds of the insurance on Pauling's life payable to her as beneficiary, free from the claims of Pauling's creditors, the question for decision is, as the District Court pointed out, whether the creation of the estates in joint tenancy and the payment of the premiums on life insurance payable to appellee were fraudulent transfers of property from Pauling to appellee. For an affirmative answer to this question appellant relies on Minnesota statutes,[2] and upon the contention that the evidence establishes the charge of fraud on which her action is founded. See Brennan v. Friedell et al., 212 Minn. 115, 2 N.W.2d 547, 548; State Bank of New London v. Swenson, 197 Minn. 425, 267 N.W. 366; Lind v. O. N. Johnson Co., 204 Minn. 30, 282 N.W. 661, 665, 119 A.L.R. 940.

We think the Minnesota decisions sustain the conclusion of the trial judge that section 550.37, an exemption statute, pertains only to situations in which creditors of a beneficiary seek to subject insurance proceeds to the debts of the beneficiary. Murphy v. Casey, 150 Minn. 107, 184 N.W. 783; Cook v. Prudential Ins. Co., 182 Minn. 496, 235 N.W. 9; Kassmir v. Prudential Ins. Co., 191 Minn. 340, 254 N.W. 446; Ross v. Simser, 193 Minn. 407, 258 N.W. 582. Since appellant was never a creditor of appellee, section 550.37 has no application in the present case. The question is, moreover, one of local law, on which the considered opinion of the trial judge will be accorded great weight by this court. Russell v. Turner et al., 8 Cir., 148 F.2d 562, 564. And we think it clear, as the District Judge held upon the authority of Irvine v. Helvering, supra, 99 F.2d at page 269, that section 513.23 is not applicable on the facts in this case, because neither the creation of the joint tenancy nor the payment of the insurance premiums resulted in the insolvency of

[2] Minnesota Statutes 1945 and M.S.A. "§ 513.23. Conveyance By Insolvent. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration. * * *

"§ 513.26. Conveyance Made With Intent To Defraud. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors. * * *

"§ 550.37. Property exempt. No property hereinafter mentioned shall be liable to attachment, or sale on any final process, issued from any court:
* * * * * * *
"(14) All money received by, or payable to, a surviving wife or child from insurance upon the life of a deceased husband or father, not exceeding $10,000."

Pauling or tended in any way to hinder, delay, or defraud his creditors. On the contrary, Pauling was at all times solvent and able to meet as they matured all obligations imposed upon him by the Illinois divorce decree (Minnesota Statutes 1945 and M.S. A. § 513.21), even on appellant's interpretation of that decree. Pauling's average annual earnings for the 10 years preceding his death were approximately $18,000, and for the last three years exceeded $21,000. The liquid assets of the estates in joint tenancy were always equal to or in excess of Pauling's matured obligations, if any, to appellant. Appellant does not deny that this property could have been subjected to Pauling's debts at any time during his life.

■ In the absence of special statutory provision or controlling presumption of law, the question of fraudulent intent is a question of fact and not of law. Minnesota Statutes 1945 and M.S.A., Section 513.15.[3] Engenmoen v. Lutroe, 153 Minn. 409, 190 N. W. 894, 895. We agree that the finding of the District Judge against appellant on this question of fact has ample support in the evidence. The presumption of honesty and legality prevails in favor of ordinary business transactions (37 C.J.S. Fraudulent Conveyances, § 382, p. 1209), and the presumption against the validity of transfers between husband and wife disappears when overcome by all of the evidence. Kummet v. Thielen et al., 210 Minn. 302, 298 N.W. 245, 246.

■ There was nothing out of the ordinary or unusual in the creation by Pauling of the joint tenancies in personal property, nor in the payment of premiums on life insurance in favor of appellee. There is nothing in a joint bank account of husband and wife to arouse suspicion of dishonesty. By far the greater value of the joint tenancies was invested in United States war bonds purchased during the war. The issue of these bonds payable to husband and wife or to the survivor of them of itself constitutes no badge of fraud. In Minnesota, even an insolvent husband may carry a reasonable amount of life insurance in favor of his wife. A creditor of the husband seeking to recover premiums paid by him upon life insurance of which his wife is the beneficiary carries the burden of proving the fraud alleged. Ross v. Minnesota Mutual Life Ins. Co., 154 Minn. 186, 191 N.W. 428, 429, 31 A.L.R. 46. When it is recalled that Pauling was never insolvent, that his annual earnings were large and apparently steadily increasing from year to year, that he held only a modest personal estate, and that the estates in joint tenancy were always subject to the claims of his creditors, it cannot be said that he invested an unreasonable portion of his income in the life insurance for appellee. And whether Pauling was ever indebted to appellant, except upon the obligation to keep in effect the $4,500 policy of insurance, is questionable, to say the least.

The Illinois decree of divorce, upon which appellant bases all of her claims against Pauling's estate, is ambiguous. That decree did not in so many words require Pauling to pay appellant one-fourth of his annual income in excess of $12,000, nor did it in terms provide that his estate should be liable for $250 a month after Pauling's death. The provision of the decree with reference to life insurance in favor of appellant is hardly consistent with an interpretation of the decree which would place on Pauling's estate the burden of continuing alimony payments after his death which would result in the payment to appellant of the proceeds of insurance carried for her benefit. The evidence does not show that Pauling, at the time of the divorce, was possessed of an estate sufficient to continue alimony payments after his death. It is not unreasonable to suppose that the insurance provision of the decree was incorporated in recognition of this fact, and that the insurance, as is usually the case, was intended in substitution for the income which appellant would lose by Pauling's death. Pauling's liability under the divorce decree for the

---

**3** "Fraudulent Intent Question Of Fact. The question of fraudulent intent, in all cases arising under this [subdivision,] shall be deemed a question of fact, and not of law; and no conveyance or charge shall be adjudged fraudulent as against creditors solely on the ground that it was not founded on a valuable consideration."

536

payment of alimony terminated with the marriage of appellant, an event which even now is not beyond the range of possibility.

■ Appellant's failure for nearly 13 years after the effective date of the divorce decree to assert the rights which she now claims, and Pauling's failure to recognize these rights, is some evidence that neither she nor Pauling placed the interpretation upon the decree which she now asserts. Since Pauling was eight years younger than appellant, the natural assumption for both of them was that he would outlive appellant. On this assumption, neither of them would have given much thought to the possible liability of Pauling's estate for continued alimony payments. It is true, of course, that Pauling's interpretation of the decree could not affect his actual liability under it, but his understanding of his liability under the decree is entitled to some consideration upon the question of his intent in the creation of the joint tenancies and the payment of premiums on life insurance in favor of appellee. And the course pursued for years by both appellant and Pauling in carrying out the terms of the divorce decree is strong evidence of the meaning which both of them placed upon it. Storey v. Storey, 125 Ill. 608, 18 N.E. 329, 332, 1 L.R.A. 320, 8 Am.St.Rep. 417.

The judgment of the District Court is affirmed.