CITIZENS STATE BANK NORWOOD
YOUNG AMERICA, Respondent,

v.

Gordon BROWN, et al., Appellants.

No. A12–1257.

Court of Appeals of Minnesota.

April 29, 2013.

Alan M. Albrecht, Gavin, Winters, Twiss, Thiemann & Long, Ltd., Glencoe, MN, for respondent.

Eric J. Magnuson, Amie E. Penny Sayler, Briggs and Morgan, P.A., Minneapolis, MN; and Robert M. McClay, McClay and Alton, PLLP, St. Paul, MN, for appellants.

Considered and decided by WORKE, Presiding Judge; SCHELLHAS, Judge; and CRIPPEN, Judge.*

## OPINION

SCHELLHAS, Judge.

In this fraudulent-conveyance dispute, appellants argue that the district court erred by granting summary judgment to respondent on its claim that appellants engaged in fraudulent transfers of assets to prevent respondent from levying on those assets to enforce its money judgment. We affirm.

## FACTS

The facts are derived from the parties' submissions to the district court in connection with the summary-judgment motion of respondent Citizens State Bank Norwood Young America (bank) and are undisputed. In support of its summary-judgment motion, the bank submitted a memorandum of law and its counsel's affidavit with attached exhibits. In opposition to summary judgment, appellants Gordon Brown and Judy Brown submitted two memoranda of law and their counsel's affidavit with attached exhibits. Those exhibits included a copy of the Browns' marriage-dissolution judgment and decree.

The Browns were married on January 10, 1987. During the marriage, Gordon Brown guaranteed debt in excess of $8,800,000, including principal indebtedness to the bank in the amount of $227,040. The borrower defaulted on this debt, and the bank sued Gordon Brown and others and obtained a judgment for more than $290,000 against Gordon Brown on June 29, 2010. The bank attempted unsuccess-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

fully to satisfy its judgment against Gordon Brown.

■ In March 2010, with the assistance of counsel who is the Browns' co-counsel in this appeal, Gordon Brown petitioned for marital dissolution from Judy Brown. Judy Brown was unrepresented and interposed no answer to the petition. The Browns executed a marital-termination agreement (MTA), and the district court incorporated its terms in a marriage-dissolution judgment and decree, entering judgment on October 8, 2010. At the time of the dissolution, Gordon Brown was age 94, Judy Brown was age 55, and their respective monthly incomes were approximately $4,000 from social security and $500 from part-time employment. Neither party was awarded spousal maintenance. The judgment and decree distributed the Browns' marital property as follows, the amounts approximated according to the judgment and decree:

*To Judy Brown*

$1,200,000 RBC Wealth Management account

$26,000 RBC IRA account

$84,000 Minnesota Bank & Trust account

$600,000 Pontoon Partnership interest (net value)

$125,000 Northport Corporation accounts receivable

$51,000 Charles Schwab account

$11,000 approximately in various checking and savings accounts

2002 Chevrolet Pickup, unencumbered

1993 Jaguar, unencumbered

1985 Rolls Royce, unencumbered

*To Gordon Brown*

$421,900 [1] marital homestead, unencumbered

$140,000 Clearwater Marine International 401K retirement account

$80,000 stock in Clearwater Marine, Inc.

$3,000 checking account

1999 Cadillac, unencumbered.

In the judgment and decree, the district court assigned to Gordon Brown indebtedness in excess of $271,850 and ordered that he hold harmless and indemnify Judy Brown against liability on the debts. The court also ordered Gordon Brown to hold harmless and indemnify Judy Brown against liability for Gordon Brown's personal guarantees in the amount of $8,807,040.

The bank commenced a fraudulent-conveyance action against the Browns soon after their marriage dissolution, alleging that Gordon Brown fraudulently transferred "substantially all" of his assets to Judy Brown and "retain[ed] possession and control" of the assets "shortly after the substantial debt owed to [the bank] became a judgment." [2] The bank sought to levy execution on the assets transferred by Gordon Brown to Judy Brown through the Browns' marriage dissolution and moved for summary judgment.

Based on the distribution of assets in the marital dissolution, and in recognition of the fact that Gordon Brown had pledged some of the assets awarded to Judy Brown to secure his personal guarantees, the district court noted that "Judy Brown was awarded approximately $2,000,000.00 in assets and . . . Gordon Brown was left with a

---

1. Based on the Browns' MTA, this figure represents the 2010 tax-assessed value of the homestead. The Browns submitted an appraisal to the court as exhibit D to their counsel's affidavit, showing an appraised value of $355,000, as of January 8, 2011.

2. The Browns' attorney conceded during his oral argument before this court that the Browns continue to live together in their marital home.

negative net worth of approximately $8,500,000.00." The court ruled that the transfers of assets accomplished through the marital dissolution constituted actual fraud under Minn.Stat. § 513.44 (2012).

This appeal follows.

## ISSUE

Did the district court err by granting summary judgment in favor of the bank because the Browns did not rebut by clear and convincing evidence the statutory presumption that the transfers of assets from Gordon Brown to Judy Brown were fraudulent?

## ANALYSIS

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. An appellate court reviews a "district court's legal decisions on summary judgment under a de novo standard, and view[s] the evidence in the light most favorable to the party against whom judgment was granted." *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn.2012) (quotations omitted).

### *Actual Fraud*

 "Statutes invalidating fraudulent conveyances are designed to prevent debtors from putting property which is available for the payment of their debts beyond the reach of their creditors. If the property transferred is not subject to the claims of creditors, the rules as to fraudulent conveyances do not apply." *Kummet v.*

*Thielen*, 210 Minn. 302, 306 298 N.W. 245, 247 (1941). "The Uniform Fraudulent Transfer Act (UFTA) prohibits a debtor from transferring property with the intent to hinder, delay, or defraud any creditors." *New Horizon Enters., Inc. v. Contemporary Closet Design, Inc.*, 570 N.W.2d 12, 14 (Minn.App.1997) (citing Minn.Stat. §§ 513.41–513.51 (1996)); *see* Minn.Stat. § 513.51 ("Sections 513.41 to 513.51 may be cited as the 'Uniform Fraudulent Transfers Act.'"). "Under the UFTA, liability can be imposed for transfers of property with actual or constructive intent to defraud a creditor." *New Horizon*, 570 N.W.2d at 15.

A creditor may bring an action for relief from a fraudulent transfer to "avoid[ ] ... the transfer or obligation to the extent necessary to satisfy the creditor's claim," Minn.Stat. § 513.47(a)(1)(2012),[3] among other types of relief. Eleven "'badges of fraud'" are enumerated in section 513.44(b) and establish circumstantial evidence of intent to defraud, which is "seldom susceptible of direct proof." *In re Butler*, 552 N.W.2d 226, 231 (Minn.1996); *see United States v. Leggett*, 292 F.2d 423, 426 (6th Cir.1961) ("The issue of fraud is commonly determined by certain recognized indicia, denominated 'badges of fraud,' which are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them."). The Uniform Fraudulent Transfer Act (UFTA) prohibits fraudulent transfers by debtors, stating:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was

---

3. We apply the law as it exists today because appellate courts generally apply the law as it exists at the time they rule on a case, and no exception to that rule warrants doing otherwise. *See Interstate Power Co. v. Nobles Cnty.*

*Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) ("The general rule is that appellate courts apply the law as it exists at the time they rule on a case....").

made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

(b) In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn.Stat. § 513.44 (2012).

■ Here, for the purpose of determining actual fraud under section 513.44(b), we conclude that the Browns are "insider[s]" within the meaning of section 513.44(b)(11).[4] *See In re Coffey's Case*, 157 N.H. 156, 949 A.2d 102, 120 (2008) (discussing "'badges of fraud'" in New Hampshire Fraudulent Transfer Act and stating that spouses are "'insiders'"). We also conclude that application of the factors underlying the "badges of fraud" to the undisputed facts in this record supports a singular conclusion that the Browns had actual intent to defraud the bank through the transfers of marital assets to Judy Brown.

4. Recognizing that the UFTA does not specifically address transfers between spouses, we conclude that spouses are "insiders" within the meaning of the UFTA because we do not construe the UFTA to displace the common-law presumption regarding fraudulent transfers between spouses. *See Swogger v. Taylor*, 243 Minn. 458, 465, 68 N.W.2d 376, 382 (1955) ("A statute is not to be construed in derogation of well-established principles of common law, or of equity, unless so required by express words or by necessary implication and then only to the extent clearly indicated." (emphasis omitted)); *see also Clayton v. Wilson*, 168 Wash.2d 57, 227 P.3d 278, 284 (2010) (noting that issues explicitly addressed in UFTA displace common-law principles but that, "when the UFTA is silent on a particular issue, common-law tenets supplement its provisions" (quotation omitted)).

## Constructive Fraud

■ A creditor may also bring an action on the basis of constructive fraud under the following circumstances:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Minn.Stat. § 513.45(a) (2012).

The Browns complain that certain assets did not have the values ascribed to them by the bank. But the alleged differences in value are minor in proportion to the overall value of the marital estate and do not affect the conclusive evidence of constructive fraud. *See Citizens State Bank of Hayfield v. Leth,* 450 N.W.2d 923, 926–27 (Minn.App.1990) (upholding judgment finding constructive fraud when landowner attempted to convey for $100,000 land with an actual value of $200,000, upholding district court's finding that the transferor did not receive reasonably equivalent value in exchange for the land).

## Summary Judgment

The question of whether fraudulent intent exists is normally a question of fact. *See New Horizon,* 570 N.W.2d at 15–16 (discussing statutory factors that may be considered by fact-finder in determining actual intent under the UFTA). And the factual nature of a determination of intent makes the issue one that is not typically appropriate for summary judgment. *See, e.g., Bogatzki v. Hoffman,* 430 N.W.2d 841, 846 (Minn.App.1988) (stating that summary judgment was inappropriate when issue of material fact surrounded attorney's intent regarding release), *review de-* *nied* (Minn. Dec. 21, 1988); *see also Wagner v. Schwegmann's S. Town Liquor, Inc.,* 485 N.W.2d 730, 733 (Minn.App.1992) (stating that "factual inferences must be resolved in favor of the nonmoving party" on a motion for summary judgment), *review denied* (Minn. July 16, 1992). But for summary-judgment purposes, "[n]o genuine issue of material fact exists when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Frieler v. Carlson Mktg. Grp., Inc.,* 751 N.W.2d 558, 564 (Minn. 2008) (quotations omitted); *see Lubbers v. Anderson,* 539 N.W.2d 398, 402 (Minn. 1995) (stating as to question of fact that, "where reasonable minds can arrive at only one conclusion," question can be decided as a matter of law). And, on summary judgment, district courts are "required to draw only *reasonable* inferences" in favor of the nonmoving party. *Superior Constr. Servs., Inc. v. Belton,* 749 N.W.2d 388, 393 (Minn.App.2008).

## Presumption of Fraud

■ "The aggrieved creditor ordinarily bears the burden of proving a conveyance is fraudulent, but the relationship between the parties to a transaction may shift this burden to varying degrees." *Snyder Electric Co. v. Fleming,* 305 N.W.2d 863, 867 (Minn.1981). "[T]ransfers between husband and wife are presumptively fraudulent." *Id.* (quotation omitted); *see Kummet,* 210 Minn. at 305–06, 298 N.W. at 246–47 (stating that "a transfer between husband and wife is presumed to be fraudulent as to existing creditors" but noting that "a transfer by a husband to his wife of property which belongs to her legally or equitably is not fraudulent as to his creditors").

Minnesota courts closely scrutinize a transfer of assets between a debtor spouse and a non-debtor spouse when the transfer

results in avoidance of debt collection by a judgment creditor:

> [I]t is well settled that such is the community of interest between husband and wife, and purchases and conveyances are so often made as a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and furnish such temptations for fraud, that they require close scrutiny.
>
> In a contest between the wife and the creditors of a husband there is, and there should be, *a presumption against her which she must overcome by affirmative proof.* Such has always been the rule of the common law, and the rule continues, though statutes have modified and changed the relations which at common law existed between husband and wife as to the property of the latter.

*Minneapolis Stock–Yards & Packing Co. v. Halonen,* 56 Minn. 469, 471, 57 N.W. 1135, 1135–36 (1894) (emphasis added); *see State Bank of New London v. Swenson,* 197 Minn. 425, 428, 267 N.W. 366, 367 (1936) (relying on *Halonen,* stating that, when a creditor attempts to satisfy an existing debt, repayment of which has been circumvented by a transfer of assets from a debtor spouse to a non-debtor spouse, a presumption that the transfer is fraudulent arises and must be met by affirmative proof showing that the transfer was not fraudulent). The burden of proving that the transfer is not fraudulent is on the transferee. *See State Bank of New London,* 197 Minn. at 428, 267 N.W. at 367–68 (stating that, "where a judgment is upon a claim which accrued prior to a conveyance to his wife of property belonging to the debtor husband, which property the creditors are trying to reach, the burden of proof is upon the wife to show the purchase by clear and satisfactory evidence, and that it was for a valuable consideration, paid by her, or by some one in her behalf" (quotation omitted)).

■ By law, Gordon Brown's transfers to Judy Brown are presumed to be fraudulent, and Judy Brown has not rebutted the presumption by clear and convincing evidence;[5] they have not rebutted the presumption with any evidence. The Browns assert that whether the distribution of assets was reasonably equivalent is a question of fact. And they assert that Gordon Brown received reasonably equivalent value for the asset transfers during the marital dissolution and did not become insolvent after the asset transfers because he was insolvent pre-dissolution. These arguments lack merit. Although the record

5. We employ the standard of proof of clear and convincing evidence, rather than clear and satisfactory evidence, in light of supreme court precedent that suggests that the standards are equal. *See, e.g., In re Reinstatement of Wegner,* 417 N.W.2d 97, 98–99 (Minn.1987) (stating that standard of proof in attorney reinstatement cases is "clear and satisfactory" but applying "clear and convincing" standard and citing authority that requires and applies "clear and convincing" standard (quotation omitted)); *Eliason v. Prod. Credit Ass'n Aitkin,* 259 Minn. 134, 135–36, 106 N.W.2d 210, 211–12 (1960) (noting that no uniformity of language exists in regard to proof of estoppel and stating that "estoppel must be proved clearly, clearly and unequivo- cally, by clear, precise, and unequivocal evidence, by clear and satisfactory evidence, by clear, convincing, and satisfactory evidence, by evidence that is full, clear, and convincing, by strong evidence, and with unusual clearness" (footnotes omitted)); *Hage v. Crookston Trust Co.,* 199 Minn. 533, 534, 272 N.W. 777, 777 (1937) (stating that jury charge requiring evidence of contract to be " 'clear, satisfactory and convincing' " was accurate statement of law); *Hanson v. Bowman,* 199 Minn. 70, 77, 271 N.W. 127, 130–31 (1937) (distinguishing between causes of action that must be proved by "mere preponderance of the evidence" and causes of action that must be proved by "clear, convincing, and satisfactory evidence").

does not reflect that Gordon Brown declared bankruptcy, his acceptance of almost all marital indebtedness greatly contributed to his insolvency and left Judy Brown with substantial assets and minimal indebtedness. *See, e.g.,* 11 U.S.C. § 303(h)(1) (2010) (recognizing insolvency when a debtor is "generally not paying . . . debts as [they] become due"). As noted by the district court, Gordon Brown transferred substantially all of his assets to Judy Brown, resulting in a greater-than-$10,000,000 difference between the assets and contingent and non-contingent liabilities distributed between them.[6] The Browns' division of assets was so unequal that it could not support a finding of an equitable distribution. A fact-finder could conclude only that the Browns actually intended to defraud the bank.

Despite the disproportionate distribution of assets, the Browns rely almost exclusively on the terms of their marriage dissolution to support their argument that the asset transfers arising out of their marriage dissolution were not fraudulent conveyances. Without citation to legal authority, the Browns essentially maintain that, because a district court approved the terms of their MTA and incorporated the terms in a marriage-dissolution judgment and decree, the asset transfers cannot be deemed to be fraudulent conveyances. We disagree. *See Estes v. Titus,* 481 Mich. 573, 751 N.W.2d 493, 503 & n. 44 (2008) (holding that "the [Michigan Uniform Fraudulent Transfer Act] applies to the transfer of property in a divorce judgment that incorporates a property settlement agreement," and concluding that "a creditor's claim under the UFTA is not an impermissible collateral attack on a divorce judgment because (1) the divorce

court has no jurisdiction to determine the rights of a creditor and (2) a creditor cannot appeal a divorce judgment").

We conclude that the dissolution court's approval of the Browns' MTA does not insulate them from the bank's fraudulent-transfer claim. We reject any notion that the dissolution court's incorporation of the terms of the Browns' MTA in the marriage-dissolution judgment and decree alters the rights of creditors under the UFTA.

The Browns make several arguments in support of their claim that the "badges of fraud" were not shown in this case. They assert that they were not husband and wife when the transfers were made, that the transfers were not concealed, and that Gordon Brown did not transfer substantially all of his assets to Judy Brown. Although appellants are correct that the transfers were not concealed because they were accomplished through a marital dissolution that was based on the parties' agreement, Gordon Brown did transfer substantially all of his assets to Judy Brown. And he accepted sole responsibility for contingent and non-contingent marital debts of over $8,500,000.

We conclude that the Browns did not present sufficient evidence to permit reasonable persons to draw different conclusions about their fraudulent intent. *See Schroeder v. St. Louis Cnty.,* 708 N.W.2d 497, 507 (Minn.2006) (stating that party with burden of proof who opposes summary judgment must present "sufficient evidence to permit reasonable persons to draw different conclusions" (emphasis omitted)). The district court therefore did not err by granting summary judgment to the bank.

---

**6.** Even fully adopting appellant's suggested values of particular assets, a great disparity in asset distribution would still exist.

## DECISION

Under the UFTA, the Browns are insiders and the UFTA applies to the transfers of assets arising out of the Browns' marriage dissolution. Gordon Brown's transfers of assets to Judy Brown are presumed to be fraudulent as to Gordon Brown's creditors, and Judy Brown has not rebutted by clear and convincing evidence the presumption that the transfers of assets were fraudulent.

**Affirmed.**